# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| ROY FORDYCE, Individually and as a Representative of a Class of Participants and Beneficiaries on Behalf of the Caliber Holdings LLC Retirement Savings Plan, <br><br> Plaintiff, <br><br> v. <br><br> WAND NEWCO 3, INC. d/b/a CALIBER COLLISION, and DOES 1-10 INCLUSIVE, <br><br> Defendant. | Case No.: 4:25-cv-00997-ALM <br><br> **Oral Argument Requested** |

## DEFENDANT'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Wand Newco 3, Inc. d/b/a Caliber Collision ("Caliber" or the "Company"), hereby moves to dismiss the Complaint (Dkt. 1) filed by Plaintiff Roy Fordyce. For the reasons discussed in the incorporated Memorandum, the Court should dismiss the Complaint in full, and with prejudice, because Plaintiff has failed to state a plausible claim upon which relief can be granted. Caliber respectfully requests that the Court schedule oral argument on the Motion.

i

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 3

PLAINTIFF'S CLAIMS ..................................................................................... 5

LEGAL STANDARD......................................................................................... 5

STATEMENT OF THE ISSUES TO BE DECIDED....................................... 6

ARGUMENT...................................................................................................... 6

I.      Plaintiff's Breach of Fiduciary Duty Claims Based on the Use of Plan Forfeitures (Counts I-II) Fail as a Matter of Law.............................................................................. 6

    A.      Plaintiff seeks to increase his benefits beyond the terms of the Plan, but ERISA does not mandate such an outcome .......................................................... 7

    B.      Plaintiff's claims contradict decades of settled law, the Treasury Department, the Department of Labor, and several recently decided cases ........ 10

    C.      Plaintiff's duty of prudence claim fails for additional reasons ............................ 15

    D.      Plaintiff's duty of loyalty claim fails for additional reasons................................ 17

II.     The Prohibited Transaction Claims (Counts III-IV) Should Be Dismissed ................... 18

III.    Plaintiff's Anti-Inurement Claim (Count V) Fails As A Matter Of Law ........................ 20

CONCLUSION................................................................................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armenta v. WillScot Mobile Mini Holdings Corp.*,
  2025 WL 2645518 (D. Ariz. Sept. 15, 2025)....................................................................2, 9, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................................5

*Barragan v. Honeywell Int'l, Inc.*,
  2024 WL 5165330 (D.N.J. Dec. 19, 2024)........................................................ *passim*

*Barragan v. Honeywell Int'l Inc.*,
  2025 WL 2383652 (D.N.J. Aug. 18, 2025), *appeal pending*, No. 25-2609 (3d
  Cir. Aug. 22, 2025).......................................................................................2, 14, 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).....................................................................................................5, 6

*Bozzini v. Ferguson Enters. LLC*,
  2025 WL 1547617 (N.D. Cal. May 29, 2025).............................................................2

*Brown v. Peco Foods, Inc.*,
  No. 3:25-cv-00491-TSL-RPM (S.D. Miss. Nov. 14, 2025), ECF No. 17 ...................... *passim*

*Buescher v. N. Am. Lighting, Inc.*,
  791 F. Supp. 3d 873 ......................................................................................3, 16, 17

*Cain v. Siemens Corp.*,
  2025 WL 2172684 (D.N.J. July 31, 2025).................................................................2, 14, 18

*Cano v. Home Depot, Inc.*,
  2025 WL 2589567 (D. Ga. Aug. 26, 2025) ..............................................................2, 14, 21

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ......................................................................................3

*Del Bosque v. Coca-Cola Sw. Beverages LLC*,
  No. 3:25-cv-01270-X (N.D. Tex. Nov. 13, 2025), ECF No. 31 ...................................... *passim*

*Dimou v. Thermo Fisher Sci. Inc.*,
  2024 WL 4508450 (S.D. Cal. Sept. 19, 2024)................................................................ *passim*

iii

*Dimou v. Thermo Fisher Sci. Inc.*,
  2025 WL 2611240 (S.D. Cal. Sept. 9, 2025)............................................................2, 8, 14, 19

*In re Elec. Data Sys. Corp. ERISA Litig.*,
  305 F. Supp. 2d 658 (E.D. Tex. 2004)..................................................................................4

*Estay v. Ochsner Clinic Found.*,
  2025 WL 2644782 (E.D. La. Sept. 15, 2025) ................................................................ *passim*

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014).............................................................................................................6

*Fumich v. Novo Nordisk Inc.*,
  2025 WL 2399134 (D.N.J. Aug. 19, 2025) ........................................................2, 14, 21, 22

*Hanson v. Wilcox Veterinary Clinic PLLC*,
  596 F. Supp. 3d 742 (E.D. Tex. 2021)..................................................................................3

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999)..................................................................................................7, 21, 22

*Hutchins v. HP Inc.*,
  737 F. Supp. 3d 851 (N.D. Cal. 2024) ........................................................................... *passim*

*Hutchins v. HP Inc.*,
  767 F. Supp. 3d 912 (N.D. Cal. 2025), *appeal pending*, No. 25-826 (9th Cir.
  Feb. 7, 2025) ...............................................................................................................1, 12, 14

*Hutchins v. HP Inc.*,
  No. 25-826 (9th Cir. July 9, 2025).................................................................................12, 13

*Jones v. Hartford Life & Accident Ins. Co.*,
  2016 WL 5887601 (E.D. Tex. Oct. 7, 2016) .......................................................................4

*Krohnengold v. N.Y. Life Ins. Co.*,
  2022 WL 3227812 (S.D.N.Y. Aug. 10, 2022).....................................................................21

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996)..................................................................................................7, 20, 21

*Loomis v. Exelon Corp.*,
  658 F.3d 667 (7th Cir. 2011), *abrogated on other grounds by Hughes v. Nw.*
  *Univ.*, 63 F.4th 615 (7th Cir. 2023)......................................................................................9

iv

*Madrigal v. Kaiser Found. Health Plan, Inc.*,
    2025 WL 1299002 (C.D. Cal. May 2, 2025) ...........................................................2, 14, 20, 22

*Matula v. Wells Fargo & Co.*,
    2025 WL 1707878 (D. Minn. June 18, 2025), *appeal docketed,* No. 25-2441
    (8th Cir. July 22, 2025)................................................................................................................2

*McWashington v. Nordstrom, Inc.*,
    2025 WL 1736765 (W.D. Wash. June 23, 2025)............................................................. *passim*

*Mead Corp. v. B.E. Tilley*,
    490 U.S. 714 (1989).................................................................................................................11

*Middleton v. Amentum Parent Holdings, LLC*,
    2025 WL 2229959 (D. Kan. Aug. 5, 2025) ..................................................................2, 14, 21

*Naylor v. BAE Sys., Inc.*,
    2024 WL 4112322 (E.D. Va. Sept. 5, 2024)................................................................... *passim*

*Nykiel v. Smith & Nephew, Inc.*,
    2025 WL 2347549 (D. Mass. July 11, 2025)...............................................................................2

*Polanco v. WPP Grp. USA, Inc.*,
    2025 WL 3003060 (S.D.N.Y. Oct. 27, 2025)................................................................. *passim*

*Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*,
    541 U.S. 1 (2004)....................................................................................................................21

*Sievert v. Knight-Swift Transp. Holdings, Inc.*,
    780 F. Supp. 3d 870 (D. Ariz. 2025) ............................................................................ *passim*

*Steen v. Sonoco Prods. Co.*,
    2025 WL 2420725 (D.S.C. June 4, 2025)...................................................................... *passim*

*Twombly v. Bell Atl. Corp.*,
    313 F. Supp. 2d 174 (S.D.N.Y. 2003).........................................................................................6

*U.S. Airways v. McCutchen*,
    569 U.S. 88 (2013)....................................................................................................................7

*Walker v. Nerco, Inc.*,
    1997 WL 811704 (5th Cir. Dec. 11, 1997)..............................................................................7, 8

*Wright v. JPMorgan Chase & Co.*,
    2025 WL 1683642 (C.D. Cal. June 13, 2025), *appeal docketed,* No. 25-4235
    (9th Cir. July 9, 2025) ................................................................................................... *passim*

**Statutes**

26 U.S.C. § 401 ...............................................................................................................10

26 U.S.C. § 401(a)(2) .......................................................................................................11

26 U.S.C. § 401(a)(8) .......................................................................................................11

29 U.S.C. § 1103 ..............................................................................................................14

29 U.S.C. § 1103(c)(1) ...........................................................................................5, 11, 21

29 U.S.C. § 1104 ..............................................................................................................14

29 U.S.C. § 1104(a)(1)(A) ...............................................................................................17

29 U.S.C. § 1104(a)(1)(A)(ii) ............................................................................................9

29 U.S.C. § 1104(a)(1)(B) ...............................................................................................15

29 U.S.C. § 1106 .................................................................................................14, 19, 20

29 U.S.C. § 1106(a) .....................................................................................................5, 18

29 U.S.C. § 1106(b) .................................................................................................5, 18, 19

29 U.S.C. § 1204 ..............................................................................................................10

Pub. L. No. 99-514, 100 Stat. 2085, § 1119(a) (1986) ...................................................12

**Other Authorities**

26 C.F.R. § 1.401-7(a) .....................................................................................................11

83 Fed. Reg. 34469-01, 34470 (July 20, 2018) ..............................................................11

88 Fed. Reg. 12282-01, 12283..........................................................................................12

88 Fed. Reg. 12282-01, 12285..........................................................................................16

Dep't of Labor, Understanding Retirement Plan Fees and Expenses, 2,
    https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-
    activities/resource-center/publications/retirement-plan-fees-expenses.pdf (last
    visited Nov. 14, 2025) ............................................................................................................. 9

H.R. Rep. No. 99-841 (1986) ......................................................................................................... 12

Rev. Ruling 67-68, 1967-1 C.B. 86, 1967 WL 15409 ................................................................... 11

Rev. Ruling 71-313, 1971-2 C.B. 203, 1971 WL 26693 (1971) ................................................... 11

Fed. R. Civ. P 12(b)(6) .................................................................................................... 3, 5, 6, 14

## INTRODUCTION

Caliber sponsors the Caliber Holdings LLC Retirement Savings Plan (the "Plan")[1] to help its employees save for retirement.  The Plan is a 401(k) defined contribution plan funded through employee contributions plus Caliber's discretionary voluntary and discretionary matching contributions (collectively, "discretionary employer contributions").[2]  Plan participants are always 100% vested in their own employee contributions, while any contributions Caliber makes vest after three years.  Under the terms of the Plan, if a participant leaves employment before Caliber's contributions have vested, those unvested amounts are forfeited, meaning the employee is not entitled to them.

The Plan expressly provides that retained forfeitures may be used to reduce Caliber's discretionary employer contributions.  Nevertheless, Plaintiff claims that Caliber violated ERISA by doing exactly what the Plan permitted: using forfeitures to offset a portion of Caliber's discretionary employer contributions to the Plan, which in turn funds benefits to Plan participants.  According to Plaintiff, and notwithstanding the Plan terms, ERISA instead required Caliber to use forfeitures to pay for Plan administrative expenses.

Plaintiff's theory contradicts fundamental ERISA principles and decades of regulatory guidance expressly permitting the use of plan forfeitures to reduce employer contributions to a plan, and it has been soundly rejected by a growing mountain of case law dismissing similar claims. *See, e.g.*, *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 923 (N.D. Cal. 2025) ("*Hutchins II*"), *appeal*

---

[1] Prior to October 1, 2024, the Plan was known as the Caliber Holdings Corporation Retirement Savings Plan.

[2] Discretionary "matching" contributions are provided only to "match" a portion of employees' own contributions, whereas the discretionary voluntary contributions are "non-elective," meaning that they are provided regardless of whether an employee elects to contribute any of their own funds to the Plan.

*pending*, No. 25-826 (9th Cir. Feb. 7, 2025); *Barragan v. Honeywell Int'l Inc.*, 2025 WL 2383652, at \*4 (D.N.J. Aug. 18, 2025) ("*Barragan II*") (collecting cases), *appeal pending*, No. 25-2609 (3d Cir. Aug. 22, 2025).[3]  As these cases (and guidance from the Treasury Department and Department of Labor) recognize, forfeited contributions are still employer contributions, and there is nothing improper about allowing forfeitures to be used to fund other benefits under the Plan.

This is all the more true here because all of Caliber's contributions under the Plan are *discretionary* employer contributions.  Under the terms of the Plan, Caliber is not required to contribute *anything* for Plan participants.  Thus, by using forfeitures as discretionary contributions to Plan participants, Caliber provided participants with a greater benefit than they would otherwise have been entitled to under the Plan.  *See Polanco v. WPP Grp. USA, Inc.*, 2025 WL 3003060, at \*4 (S.D.N.Y. Oct. 27, 2025) ("Because [the plan sponsor] was not required to pay employer

---

[3] *See also* Opinion and Order, *Brown v. Peco Foods, Inc.*, No. 3:25-cv-00491-TSL-RPM (S.D. Miss. Nov. 14, 2025), ECF No. 17 (attached as Ex. 5); Opinion and Order, *Del Bosque v. Coca-Cola Sw. Beverages LLC*, No. 3:25-cv-01270-X (N.D. Tex. Nov. 13, 2025), ECF No. 31 (attached as Ex. 6); *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870 (D. Ariz. 2025); *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851 (N.D. Cal. 2024) ("*Hutchins I*"); *Estay v. Ochsner Clinic Found.*, 2025 WL 2644782 (E.D. La. Sept. 15, 2025); *Armenta v. WillScot Mobile Mini Holdings Corp.*, 2025 WL 2645518 (D. Ariz. Sept. 15, 2025); *Dimou v. Thermo Fisher Sci. Inc.*, 2024 WL 4508450 (S.D. Cal. Sept. 19, 2024) ("*Dimou I*"); *Dimou v. Thermo Fisher Sci. Inc.*, 2025 WL 2611240 (S.D. Cal. Sept. 9, 2025) ("*Dimou II*"); *Cano v. Home Depot, Inc.*, 2025 WL 2589567 (D. Ga. Aug. 26, 2025); *Fumich v. Novo Nordisk Inc.*, 2025 WL 2399134 (D.N.J. Aug. 19, 2025); *Barragan v. Honeywell Int'l, Inc.*, 2024 WL 5165330, at \*4 (D.N.J. Dec. 19, 2024) ("*Barragan I*"); *Middleton v. Amentum Parent Holdings, LLC*, 2025 WL 2229959 (D. Kan. Aug. 5, 2025); *Cain v. Siemens Corp.*, 2025 WL 2172684 (D.N.J. July 31, 2025); *Nykiel v. Smith & Nephew, Inc.*, 2025 WL 2347549, at \*5 (D. Mass. July 11, 2025), *R. & R. adopted*, 2025 WL 2347430 (D. Mass. Aug. 13, 2025); *McWashington v. Nordstrom, Inc.*, 2025 WL 1736765 (W.D. Wash. June 23, 2025); *Matula v. Wells Fargo & Co.*, 2025 WL 1707878 (D. Minn. June 18, 2025), *appeal docketed,* No. 25-2441 (8th Cir. July 22, 2025); *Wright v. JPMorgan Chase & Co.*, 2025 WL 1683642 (C.D. Cal. June 13, 2025), *appeal docketed,* No. 25-4235 (9th Cir. July 9, 2025); *Steen v. Sonoco Prods. Co.*, 2025 WL 2420725 (D.S.C. June 4, 2025); *Bozzini v. Ferguson Enters. LLC*, 2025 WL 1547617 (N.D. Cal. May 29, 2025); *Madrigal v. Kaiser Found. Health Plan, Inc.*, 2025 WL 1299002 (C.D. Cal. May 2, 2025); *Naylor v. BAE Sys., Inc.*, 2024 WL 4112322 (E.D. Va. Sept. 5, 2024).

contributions, every forfeited dollar allocated toward future employer contributions was a dollar [p]lan participants would not otherwise have in their accounts."); *Buescher v. N. Am. Lighting, Inc.*, 791 F. Supp. 3d 873, 886 and 894 n.12 (C.D. Ill. 2025) (rejecting challenge to the use of forfeitures to offset discretionary employer contributions because "the entire concept of 'offsetting' a discretionary contribution makes little sense, given that [d]efendants were free to simply make *no* discretionary contribution"). Simply put, nothing in ERISA or the Plan requires Caliber to make any discretionary contributions at all, so there can be no violation of ERISA by using forfeitures to provide that benefit.

Consistent with the precedent cited above, each of Plaintiff's claims, Counts I-V, fail to state a claim. *See, e.g.*, *Estay*, 2025 WL 2644782, at *5-7 (dismissing similar forfeiture claims); *Steen*, 2025 WL 2420725, at *5 (dismissing similar complaint and explaining that using forfeitures to fund employer contributions "is *expressly permitted* under ERISA's anti-inurement framework") (emphasis added).

For these and other reasons discussed below, the Court should dismiss the Complaint with prejudice for failure to state a claim under Rule 12(b)(6).

## BACKGROUND

The Plan is a defined contribution 401(k) plan under ERISA and the Internal Revenue Code. Compl. ¶ 11; Ex. 1 (Plan Document) at 1; Ex. 2 (Plan Adoption Agreement) § 5(a).[4] Caliber

---

[4] The Court may consider the governing Plan documents and related materials on a Rule 12(b)(6) motion to dismiss because they are incorporated by reference in the Complaint and serve as the basis for Plaintiff's claims. Compl. p. 7 n.2 (alleging that "[a]ll factual assertions in this section are taken from . . . the Plan's operative governing documents during the class period," "the Plan's summary plan description," and "the Plan's Form 5500s"); *see also Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); *Hanson v. Wilcox Veterinary Clinic PLLC*, 596 F. Supp. 3d 742, 748 n.1 (E.D. Tex. 2021) (where ERISA plan documents are "referred to in the Complaint

sponsors the Plan and is the Plan Administrator.  Compl. ¶ 19; Ex. 1 § 1.43; Ex. 2 § 1.

Employee accounts in the Plan are funded through a combination of their own contributions and discretionary employer contributions.  Compl. ¶ 32; Ex. 2 §§ 20-28.  Eligible employees are automatically enrolled in the Plan but can elect to increase or lower their own contributions.  Ex. 1 § 3.02(B)(4)(d); Ex. 2 §§ 11(m), 20(b)(1), 21(f), 21(j).

Each year, Caliber may choose to make discretionary employer contributions although it is not obligated to make any such contributions under the terms of the Plan.  Ex. 2 §§ 24(a), 27(a).  From 2019 to 2024, Caliber contributed approximately $125 million to the Plan.  Ex. 3 (2019-2024 Form 5500 Excerpts).

Employee contributions vest immediately, while discretionary employer contributions generally vest after three years.  Compl. ¶ 37; Ex. 1 §§ 5.03(B), 5.03(E); Ex. 2 § 41(b)(3).  Participants who terminate before vesting typically "forfeit" the unvested portion of their discretionary employer contributions.  Compl. ¶ 38; Ex. 1 § 5.07.[5,6]  These forfeited amounts are referred to in aggregate as "forfeitures" and are not allocated to any participant's account but remain in the Plan.  Compl. ¶ 117 (alleging forfeitures "sit in an unallocated plan account"); Ex. 1 § 7.04(A).

The Plan expressly addresses the use of forfeitures, which may be used to reduce

---

and central to the claims at issue" they "are properly considered part of the pleadings"); *Jones v. Hartford Life & Accident Ins. Co.*, 2016 WL 5887601, at *2 (E.D. Tex. Oct. 7, 2016) (same); *In re Elec. Data Sys. Corp. ERISA Litig.*, 305 F. Supp. 2d 658, 668 n.17 (E.D. Tex. 2004) (same).

[5] Generally, participants who retire after attaining age 65, die, or become permanently disabled receive 100% of employer matching contributions at the time of distribution, regardless of whether they otherwise satisfied the Plan's 3-year vesting requirements.  Ex. 1 § 5.01; Ex. 2 §§ 38(a), 40(a).

[6] Participants forfeit the non-vested portion of their account on the earlier of (1) the date the participant takes a distribution of their vested interest in the Plan or, (2) if they do not take such a distribution, the date upon which the participant incurs a consecutive five-year break in service (i.e., five consecutive years with less than 500 hours of service).  Ex. 1 §§ 5.06(A)-(B), 5.07(A).

discretionary employer contributions or pay reasonable Plan expenses.  Ex. 1 §§ 3.07(A)(2)-(3); Ex. 2 §§ 24(a), 27(a), 33(b)(4)-(6); *see also* Compl. ¶ 39 ("[T]he Plan's governing documents at a minimum granted discretion to the Plan Fiduciaries with respect to the use and control of Forfeited Plan Assets, including to pay Plan Expenses.").

**PLAINTIFF'S CLAIMS**

Through five separate counts, Plaintiff asserts three categories of ERISA claims.

In Counts I-II, Plaintiff claims that despite the Plan language, Caliber breached its fiduciary duties of loyalty (Count I) and prudence (Count II) by using forfeitures as discretionary employer contributions.  Compl. ¶¶ 108-20.

In Counts III-IV, Plaintiff claims that by using forfeitures as discretionary employer contributions, Caliber violated ERISA's prohibited transaction rules, 29 U.S.C. § 1106(b) (Count III) and 29 U.S.C. § 1106(a) (Count IV).  *Id.* ¶¶ 121-32.

Lastly, in Count V, Plaintiff claims that by using Plan forfeitures to cover a portion of Caliber's discretionary contributions to the Plan, Caliber violated ERISA's anti-inurement provision, 29 U.S.C. § 1103(c)(1).  *Id.* ¶¶ 133-38.

**LEGAL STANDARD**

To survive dismissal under Rule 12(b)(6), Plaintiff's Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Whether a complaint states a plausible claim is context-specific and requires more than offering conclusory allegations devoid of factual support.  *Id*.  Moreover, charts and numbers alone cannot defeat a motion to dismiss.  The Supreme Court first articulated the now-governing Rule 12(b)(6) standard in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), where the Court affirmed dismissal of a complaint that included color-coded maps of various territories that purportedly "evidence[d] the degree to which the defendants operate[d] in separate

5

markets." *Twombly v. Bell Atl. Corp.*, 313 F. Supp. 2d 174, 182 (S.D.N.Y. 2003). Those maps, even if accurate, did not amount to "allegations plausibly suggesting (*not merely consistent with*) agreement" in violation of the antitrust laws. *Twombly*, 550 U.S. at 557 (emphasis added).

The Supreme Court has emphasized that Rule 12(b)(6) is an "important mechanism for weeding out meritless [ERISA] claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

## STATEMENT OF THE ISSUES TO BE DECIDED

Under Rule 12(b)(6), should Plaintiff's claims against Caliber be dismissed?

## ARGUMENT

### I.  Plaintiff's Breach of Fiduciary Duty Claims Based on the Use of Plan Forfeitures (Counts I-II) Fail as a Matter of Law

The crux of Plaintiff's theory is that under ERISA, "fiduciaries must *always* use forfeitures to 'defray reasonable plan expenses' prior to reducing employer contributions." Compl. ¶ 59 (emphasis added). That "theory of liability has broad reach, and it is the theory's breadth that makes it implausible." *Hutchins I*, 737 F. Supp. 3d at 862. At core, Plaintiff is asking this Court to *increase* his benefits beyond those required under the terms of the Plan. But that request finds no basis in ERISA, which requires only that Caliber provide the benefits promised under the terms of the Plan. Moreover, Plaintiff's forfeiture theory flies in the face of decades of settled law authorizing the use of forfeitures to reduce employer contributions (exactly as Caliber has done) and a burgeoning wave of case law across the country—including every district court within the Fifth Circuit to consider these issues—rejecting similar claims. *E.g.*, *Brown*, slip op.; *Del Bosque*, slip op.; *Estay*, 2025 WL 2644782. Further compounding Plaintiff's pleading deficiencies is the fact that the contributions Caliber offset with forfeitures were entirely *discretionary* under the terms of the Plan, which means that "every forfeited dollar allocated toward future employer

contributions was a dollar [p]lan participants would not otherwise have in their accounts."
*Polanco*, 2025 WL 3003060, at \*4.

### A.    Plaintiff seeks to increase his benefits beyond the terms of the Plan, but ERISA does not mandate such an outcome

The first fatal flaw in Plaintiff's fiduciary-breach theory is that it rests on the unsupportable proposition that ERISA *requires* forfeitures to be used to pay for Plan expenses that may be lawfully charged to Plan participants.  In effect, Plaintiff seeks increased benefits and a windfall in the form of free or subsidized Plan services.  That theory finds no grounding in the law and, in fact, contradicts foundational ERISA principles.

Congress enacted ERISA to ensure that retiring employees receive the benefits promised them under the terms of their retirement plan.  But nothing in ERISA establishes what those benefits are or requires employers to pay any more than the plan requires.  *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 446 (1999) ("ERISA, by and large, is concerned with ensuring that employees will not be left emptyhanded once employers have guaranteed them certain benefits, not with depriving employers of benefits incidental thereto") (cleaned up); *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996) ("Nothing in ERISA requires employers to establish employee benefits plans.  Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan."); *Walker v. Nerco, Inc.*, 1997 WL 811704, at \*1 (5th Cir. Dec. 11, 1997) ("ERISA does not require an employer to establish employee benefit plans nor does ERISA mandate the kinds of benefits employers must provide if they choose to have a plan."); *Estay*, 2025 WL 2644782, at \*2 ("ERISA does not require employers to establish employee benefits plans or mandate what kind of benefits employers must provide if they choose to do so").  To the contrary, the plan document alone defines what benefits a participant is entitled to.  *See, e.g.*, *U.S. Airways v. McCutchen*, 569 U.S. 88, 100-01 (2013) (ERISA's "statutory scheme . . . is built around reliance

on the face of written plan documents.") (citation omitted); *Polanco*, 2025 WL 3003060, at *4 ("Because the touchstone of ERISA is the plan document, the fiduciary duty is fulfilled where the fiduciary ensures that participants have received their promised benefits.") (internal quotations omitted).  Thus, the relevant question under ERISA is whether Plaintiff received the benefits that the Plan promised him.  The answer is yes.

Nonetheless, like other plaintiffs who have filed similar "forfeiture" cases in recent years, Plaintiff claims that ERISA implicitly supersedes the Plan and bestows an additional benefit: "the payment of his administrative costs." *Hutchins I*, 737 F. Supp. 3d at 863.  Courts have overwhelmingly rejected this theory because ERISA does not require employers to provide a greater benefit than the plan itself requires.  *E.g.*, *Del Bosque*, slip op., at 9 (explaining that Plaintiff's "theory creates an additional benefit not contemplated by ERISA and the Plan and so cannot sustain a breach of loyalty claim"); *Dimou II*, 2025 WL 2611240, at *7 (dismissing breach of prudence claim where "[p]laintiff does not—and apparently cannot—allege that [p]laintiff or any other [p]lan participant did not receive the benefits to which she was entitled under the [p]lan"); *Hutchins I*, 737 F. Supp. 3d at 863 ("[T]he [p]lan does not provide any such benefit, and [p]laintiff does not allege any facts showing that he is entitled to such a benefit."); *Naylor v. BAE Sys., Inc.*, 2024 WL 4112322, at *6 (E.D. Va. Sept. 5, 2024) ("Plaintiff's position regarding forfeitures reduce to an argument that [d]efendant was required by ERISA to . . . prioritize the use of forfeitures for . . . the payment of administrative costs or a windfall to [p]lan participants, a proposition uniformly rejected by the courts.").

Indeed, this "greater benefit" theory is actually *contrary* to ERISA, particularly where employer contributions are not promised at all, but instead are discretionary.  As already discussed, nothing in ERISA requires employers to offer any benefits at all.  *See, e.g.*, *Walker*, 1997 WL

811704, at *1. And Congress certainly did not require employers who choose to offer retirement plans, like the Plan here, to pay for or otherwise subsidize the reasonable expenses associated with the administration of the plan or the provision of plan-related services to participants. Rather, it is well settled that such expenses may lawfully be charged to the plan and its participants. *See, e.g.*, *Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011), *abrogated on other grounds by Hughes v. Nw. Univ.*, 63 F.4th 615 (7th Cir. 2023) ("ERISA does not create any fiduciary duty requiring employers to make pension plans more valuable to participants" by paying expenses); Dep't of Labor, Understanding Retirement Plan Fees and Expenses, 2, https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/retirement-plan-fees-expenses.pdf (last visited Nov. 14, 2025) (explaining plan expenses may be "allocated among individual accounts in proportion to each account balance . . . or passed through as a flat fee against each participant's account").

In short, when it comes to plan expenses, ERISA's only concern is that the amounts paid are "reasonable." 29 U.S.C. § 1104(a)(1)(A)(ii). But Plaintiff does not allege that the amount of any fee charged to him or any expense incurred by the Plan at large was unreasonable. Instead, he contends that, as long as forfeiture dollars were available, he should not have had to pay a penny toward the cost of administering the Plan or for any Plan-related service he received.[7] *E.g.*, Compl.

---

[7] Plaintiff suggests that the 2023 Form 5500 for the Plan might have "required Forfeited Plan Assets to first be used to offset Plan Expenses." Compl. ¶ 40. But statements in a Form 5500 cannot "create[] any binding legal obligation for [the plan sponsor] to use forfeitures to pay administrative expenses." *Sievert*, 780 F. Supp. 3d at 878 (rejecting similar argument based on Form 5500 language). In any event, Plaintiff misreads the 2023 Form 5500, which states only that forfeitures "***may*** first be used to pay administrative expenses." Compl. ¶ 40 (emphasis added). The use of the permissive "may" confirms that there was no *requirement* that any forfeitures be used to pay administrative expenses. *See Armenta*, 2025 WL 2645518, at *3 ("The use of the permissive word 'may' in the [p]lan terms here means the administrator can pay administrative expenses using forfeitures but is not required to do so."); *accord Brown*, slip op., at 10-11.

¶¶ 41, 59.  Nothing in ERISA requires these additional benefits, as numerous courts have held. *See, e.g.*, *Estay*, 2025 WL 2644782, at \*5 (dismissing claim because "Plaintiff's theory would create an additional benefit to participants not contemplated in the [p]lan"); *Dimou I*, 2024 WL 4508450, at \*9 (dismissing claim because ERISA does "not create an unqualified duty to pay administrative expenses"); *Polanco*, 2025 WL 3003060, at \*4 (same); *Naylor*, 2024 WL 4112322, at \*6 (same); *Hutchins I*, 737 F. Supp. 3d at 863 (same).  There is no reason to reach a different result here.

### B.   Plaintiff's claims contradict decades of settled law, the Treasury Department, the Department of Labor, and several recently decided cases

As a tax-qualified plan, the Plan is subject not only to the provisions of ERISA but also to numerous requirements set forth in the Internal Revenue Code (the "Tax Code").  *See* Ex. 1 at 1 ("[T]his Defined Contribution Pre-Approved Plan [is] intended to conform to and qualify under § 401 and § 502 of the [Tax Code].").  Adherence to these "qualification requirements" ensures both the deductibility of the employer's contributions and the tax deferral of employer contributions, employee contributions, and earnings thereon.  *See* 26 U.S.C. § 401.

From the outset, ERISA and the Tax Code have been inextricably intertwined.  Indeed, ERISA amended the Tax Code and is the source of many of the Tax Code's qualification requirements.[8]  Congress further required the Treasury Department and Department of Labor to coordinate in enforcing ERISA in areas where the Tax Code and ERISA overlap.  29 U.S.C. § 1204.  The Treasury Department has, in turn, promulgated many regulations with which a plan must comply to remain tax-qualified.  And the Supreme Court has instructed courts adjudicating

---

[8]   *See, e.g.*, Dep't of Labor, History of EBSA and ERISA, *available at* https://www.dol.gov/agencies/ebsa/about-ebsa/about-us/history-of-ebsa-and-erisa   (last visited Nov. 14, 2025) ("Title II of ERISA, which amended the Internal Revenue Code to parallel many of the Title I rules, is administered by the IRS.").

ERISA claims to "consider the views of the . . . IRS," one of two "agencies responsible for enforcing ERISA," because otherwise it "would be to embark upon a voyage without a compass." *Mead Corp. v. B.E. Tilley*, 490 U.S. 714, 726 (1989) (cleaned up).

Much like ERISA, the Tax Code mandates that assets in a tax-qualified trust must not be "used for, or diverted to, purposes other than for the exclusive benefit of" participants and beneficiaries. 26 U.S.C. § 401(a)(2); 26 C.F.R. § 1.401-2; *compare* 29 U.S.C. § 1103(c)(1) (using similar "exclusive purpose" language in ERISA). Thus, a plan would not be qualified under the Tax Code if it allowed for "any part of the corpus or income [to] be . . . used for, or diverted to" some other purpose—like benefiting the employer. 26 U.S.C. § 401(a)(2).

Interpreting this rule, Treasury Regulations dating back to before ERISA's enactment in 1974 have *expressly authorized* the use of forfeitures to reduce or offset employer contributions. 26 C.F.R. § 1.401-7(a) (forfeitures "must be used as soon as possible to reduce the employer's contributions under the plan"). Likewise, the Treasury Department has long issued guidance allowing plans to use forfeitures for this purpose. *See* Rev. Ruling 71-313, 1971-2 C.B. 203, 1971 WL 26693 (1971) (explaining that "profit-sharing and stock bonus plans," such as the Plan here, "may provide that forfeitures be used *to reduce employer contributions* that otherwise would be required under the contribution formula contained in the plan" (emphasis added)).[9]

Congress has confirmed the Treasury Department's position that forfeitures may be used to reduce employer contributions to a plan. Specifically, the Tax Reform Act of 1986 amended 26 U.S.C. § 401(a)(8), which prohibits using forfeitures to "increase the benefits any employee would

---

[9] *See also, e.g.*, 83 Fed. Reg. 34469-01, 34470 (July 20, 2018) (final Treasury Regulations allowing "forfeitures of prior contributions to be used to fund" certain "qualified" employer contributions to align the treatment of "qualified" employer contributions with the way forfeitures can be used to fund all other employer contributions); Rev. Ruling 67-68, 1967-1 C.B. 86, 1967 WL 15409.

otherwise receive," to clarify that this prohibition applies only to defined benefit plans.  *See* Pub. L. No. 99-514, 100 Stat. 2085, § 1119(a) (1986).  Meanwhile, the House Conference Report accompanying the bill made clear that "forfeitures arising in any *defined contribution plan* [like the Plan here] can either be (1) reallocated to the accounts of other participants in a nondiscriminatory fashion, or (2) used to *reduce future employer contributions* or administrative costs." H.R. Rep. No. 99-841, at II-442 (1986) (emphases added); *Hutchins II*, 767 F. Supp. 3d at 923 (same).

Consistent with all of the above, the Treasury Department has since proposed a new regulation requiring defined contribution plans to state that forfeitures "will be used" for one or more of three lawful purposes: "(i) To pay plan administrative expenses; (ii) *To reduce employer contributions under the plan*; or (iii) To increase benefits in other participants' accounts in accordance with plan terms."  Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282-01, 12283 (proposed Feb. 27, 2023) (emphasis added).  By expressly permitting the use of forfeitures to reduce employer contributions, the proposed and existing regulations "illustrate the difficulty with [plaintiff's] [legal] theory."  *Hutchins II*, 767 F. Supp. 3d at 923; *see also, e.g.*, *Naylor*, 2024 WL 4112322, at *5-6 (dismissing ERISA forfeiture claims, in part, because they "are contrary to analogous and proposed federal regulations").

Moreover, the Department of Labor recently filed an amicus brief in support of the defendants in *Hutchins*, a case that involves a materially identical challenge to the use of 401(k) plan forfeitures to offset employer matching contributions.  *See* Ex. 4 (Br. for the U.S. Sec'y of Labor, *Hutchins v. HP Inc.*, No. 25-826 (9th Cir. July 9, 2025)).  There, the Department of Labor expressed its position that it is generally lawful to use forfeitures to offset employer contributions and therefore urged the Ninth Circuit to affirm the dismissal of the plaintiff's claims.  As the

Department of Labor explained in its amicus brief, the district court's dismissal of the plaintiff's forfeiture-related claims is consistent with "[t]he established understanding for several decades [] that defined contributions plans . . . may allocate forfeited employer contributions to pay benefits for remaining participants rather than using those funds to defray administrative expenses." *Id*. at 1. The Department of Labor further explained that "it is simply not true that if the fiduciary chose to use [p]lan forfeitures to pay [p]lan expenses, the sponsor would automatically have increased its contributions (and thereby increased participants' benefits)." *Id*. at 18.

This is all the more true here, where employer contributions are entirely discretionary. *See Polanco*, 2025 WL 3003060, at *4 (Plaintiff's theory "is faulty because the [p]lan document does not require that [the plan sponsor] make employer contributions at all"); *Estay*, 2025 WL 2644782, at *2 (dismissing forfeiture claims where, as here, "employer matching contributions are discretionary under the [p]lan"); *Sievert*, 780 F. Supp. 3d at 880 (same). This means that the Plan does not promise Plaintiff (or any other Plan participant) that he will receive *any* employer contributions in any given year, much less at any particular level. So, using forfeitures as employer contributions—i.e., allocating forfeitures to participant accounts—actually provides Plaintiff and other participants with a benefit they would not otherwise be entitled to receive. *See Polanco*, 2025 WL 3003060, at *4. And, by definition, using forfeitures to pay expenses reduces—dollar for dollar—the forfeitures available to provide benefits.

For all of the above reasons, Caliber's use of forfeitures to offset employer contributions does not plausibly violate ERISA's fiduciary duties. "As nearly every court to address this question has concluded, when (1) a plan document gives a plan fiduciary discretion in how to use forfeitures and (2) participants otherwise receive everything guaranteed by the plan's terms, plan fiduciaries do not violate their [fiduciary duties] merely by declining to use forfeitures to cover

administrative expenses." *Polanco*, 2025 WL 3003060, at *4. This Court should join the rapidly growing number of courts that have reached this same conclusion and dismiss with prejudice Plaintiff's claims in Counts I-II. *See, e.g.*, *Wright*, 2025 WL 1683642, at *5 ("Because Plaintiff's theory of liability would contravene decades of federal regulations suggesting that using forfeitures to reduce employer contributions is entirely permissible, and would necessarily 'create benefits beyond what was promised in the Plan itself,' the Court concludes that Plaintiff has failed to state a claim under ERISA."); *Hutchins II*, 767 F. Supp. 3d at 923 (granting Rule 12(b)(6) dismissal for similar reasons); *Brown*, slip op., at 17-21 (same); *Del Bosque*, slip op., at 7-10 (same); *Armenta*, 2025 WL 2645518, at *5-6 (same); *Estay*, 2025 WL 2644782, at *5 (same); *Dimou II*, 2025 WL 2611240, at *7 (same); *Cano*, 2025 WL 2589567, at *6 (same); *Fumich*, 2025 WL 2399134, at *7 (same); *Barragan II*, 2025 WL 2383652, at *4 (same); *Middleton*, 2025 WL 2229959, at *15 (same); *Cain*, 2025 WL 2172684, at *4 (same); *McWashington*, 2025 WL 1736765, at *14 (same); *Steen*, 2025 WL 2420725, at *5 (same); *Madrigal*, 2025 WL 1299002, at *4-5 (same); *Sievert, Inc.*, 780 F. Supp. 3d at 877-79 (same); *Naylor*, 2024 WL 4112322, at *6 (same); *Barragan I*, 2024 WL 5165330, at *4 (same); *Dimou I*, 2024 WL 4508450, at *9; *Hutchins I*, 737 F. Supp. 3d at 862 (same).[10]

---

[10] Importantly, none of the ERISA provisions Plaintiff cites say anything about forfeitures—let alone prohibit using them as Treasury Regulations have always allowed. *See* Compl. ¶¶ 2-5, 134; *see also* 29 U.S.C. §§ 1103, 1104, 1106. If Congress intended to dramatically alter the way plans allocate forfeitures, it would have said so explicitly—not presume such a rule is implicit in ERISA's general fiduciary duties. Nor would Congress have expressly *endorsed* the very same use of forfeitures that the Plan authorizes here. *See supra* at 11-12. Ultimately, Plaintiff is asking the Court to find that ERISA has *always* required using forfeitures as *he* would prefer, notwithstanding industry practice, legislative history, regulatory guidance, and no material change in the decades-old statute. That is not the law, as the numerous cases cited above make clear.

### C.     Plaintiff's duty of prudence claim fails for additional reasons

Plaintiff's breach of prudence theory, like his overarching theory of liability, completely ignores the discretion granted to Caliber to decide how to allocate forfeitures under the terms of the Plan.  Plaintiff alleges that, regardless of the Plan's express language, it is *always* imprudent for a plan fiduciary to choose to use forfeitures to offset employer contributions instead of paying administrative expenses.  *E.g.*, Compl. ¶ 116.  But ERISA's duty of prudence requires only that fiduciaries act reasonably "under the circumstances then prevailing," evaluated by how other similarly situated fiduciaries act.  29 U.S.C. § 1104(a)(1)(B).  Here, these "circumstances" include decades of legal support for Caliber's actions, including Treasury Regulations and the other guidance outlined above, and the Plan terms which provide that employer contributions are entirely discretionary such that every dollar of forfeitures used to pay expenses (as Plaintiff demands) would reduce the dollars available to be allocated to participant accounts.  *See supra* at 4, 13.  And Plaintiff does not even allege that Caliber used forfeitures differently from the way other fiduciaries do so.

Further, under Plaintiff's theory, fiduciary process is apparently irrelevant because there can be only one prudent result—using forfeitures to pay administrative expenses.  *See, e.g.*, *Brown*, slip op., at 20 (dismissing plaintiff's claim based on similar theory because it "apparently relies entirely on an implication that *any* use of the forfeitures other than to defray administrative costs amounts to a breach of the duty of prudence"); *McWashington*, 2025 WL 1736765, at *14 (dismissing claim in part because "[p]laintiffs' contention allows for no set of circumstances and no context in which a prudent and loyal course of action would be to apply amounts in the 'forfeiture [] account' toward the matching contributions due from [defendant]"); *Barragan I*, 2024 WL 5165330, at *4 (rejecting as implausible the plaintiff's allegation that "any time a fiduciary is given the option to use forfeited amounts to either reduce employer contributions or pay

administrative costs, the fiduciary must choose the latter").

Plaintiff's allegation that Caliber acted "imprudently" by allowing funds to remain in the forfeiture account at year-end fares no better.  Compl. ¶ 117.  The Plan permits forfeitures to be allocated "no later than the last day of the Plan Year ***following*** the Plan Year in which the forfeiture occurs."  Ex. 1 § 3.07(B) (emphasis added).  Likewise, the 2023 proposed regulations specifically allow forfeitures to be used in the year they are forfeited or in the subsequent year.  Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282-01, 12285 (proposed Feb. 27, 2023).  This regulation does not have the force of law (yet), but Plaintiff does not identify any contrary law or regulation that requires forfeitures to be exhausted at year-end.  Indeed, such a rule would be impracticable as participants can forfeit funds at any time, including on the last day of the Plan year.  Thus, the mere fact that forfeitures remained in the account at year-end does not remotely suggest imprudence.

Finally, Plaintiff's theory also ignores that forfeitures here were used by Caliber to offset *discretionary* employer contributions.  Since those contributions were entirely discretionary, "[i]f [the plan sponsor] had used [f]orfeitures to cover administrative expenses, it would have been well within its rights simply not to provide employer contributions during the putative class period."  *Polanco*, 2025 WL 3003060, at *4.  As the court in *Polanco* explained:

> Because [the plan sponsor] was not required to pay employer contributions, every forfeited dollar allocated toward future employer contributions was a dollar [p]lan participants would not otherwise have in their accounts.  The plaintiffs' claim, therefore, is not that the defendants used [f]orfeitures in a way that did not benefit [p]lan participants—they received benefits in the form of elective employer contributions.  Instead, the plaintiffs essentially claim that they would have preferred to have [f]orfeitures used to pay administrative expenses as well as employer contributions.  The plaintiffs are correct that the defendants could have chosen to use [f]orfeitures to cover administrative fees and then separately provide employer contributions.  But the [p]lan document does not guarantee participants that benefit.

*Id*.  *See also Buescher*, 2025 WL 1927503, at *16 n.12 ("[T]he entire concept of 'offsetting' a

discretionary contribution makes little sense, given that [d]efendants were free to simply make *no* discretionary contribution.").

The same holds true here. Plaintiff received every financial benefit he was promised under the terms of the Plan *and more* (via Caliber's generous discretionary contributions throughout the putative class period). Now, he is asking for even more, but nothing in ERISA mandates that result.

### D.   Plaintiff's duty of loyalty claim fails for additional reasons

ERISA's duty of loyalty requires that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participant and beneficiaries" and for the "exclusive purpose" of "(i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). It is undisputed that the Plan does not obligate Caliber to make any discretionary employer contributions. Instead, Caliber has discretion to choose whether or not to make such contributions (and in what amounts). Thus, Caliber's decision to allocate forfeitures to participant accounts necessarily *provides a benefit to participants*—and one that they were not otherwise entitled to receive. *See Polanco*, 2025 WL 3003060, at *4; *Buescher*, 2025 WL 1927503, at *9. Nonetheless, Plaintiff seeks to distort ERISA's duty of loyalty, alleging that "ERISA requires under 29 U.S.C. § 1104(a)(1)(A) that when a settlor grants plan fiduciaries discretion related to the use of forfeitures, the fiduciaries must always use forfeitures to 'defray reasonable plan expenses' *prior to* reducing employer contributions." Compl. ¶ 110 (emphasis in original). But that is not what the statute says. Instead, the statute requires fiduciaries to discharge their duties for the purpose of "providing benefits to participants and their beneficiaries"; and "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Of course, allocating forfeitures to participant accounts is "providing benefits to participants." *See Del Bosque*, slip op., at 9-10 ("It is undisputed that

17

[defendant] used the forfeitures to the ultimate benefit of the plaintiffs because they were used to pay its contributions directly to plan participants."). And since forfeitures were used to provide benefits to participants, Caliber has complied fully with ERISA's duty of loyalty. *See id*.

For these same reasons, courts routinely reject similar disloyalty claims based on the allegedly improper use of plan forfeitures to reduce an employer's plan contributions. *See, e.g.*, *Cain*, 2025 WL 2172684, at *4 (rejecting both imprudence and disloyalty claims based on untenable forfeitures theory because to hold otherwise "would use the fiduciary duties of loyalty and prudence to create a new benefit to participants that is not provided in the plan document itself"); *Brown*, slip op., at 17-18 (similar); *Estay*, 2025 WL 2644782, at *5 (similar); *Wright*, 2025 WL 1683642, at *5 (similar); *Sievert*, 780 F. Supp. 3d at 877-79 (similar); *McWashington*, 2025 WL 1736765, at *14 (similar). The same result is appropriate here.

## II.     The Prohibited Transaction Claims (Counts III-IV) Should Be Dismissed

ERISA prohibits plan fiduciaries from causing a plan to enter into certain transactions with "a party in interest" to the plan, 29 U.S.C. § 1106(a), or for the fiduciary's own benefit or on behalf of a party whose interests are contrary to the plan, *id.* § 1106(b). Such transactions are colloquially known as "prohibited transactions." In Counts III-IV, Plaintiff attempts to recast his breach of fiduciary duty theory as a prohibited transaction: alleging that Caliber's use of forfeitures to cover a portion of Caliber's discretionary employer contributions somehow violated Sections 1106(a) and (b). Compl. ¶¶ 121-32. But the prerequisite for any prohibited transaction claim is that "a transaction" occurred in the first place. *E.g.*, *Dimou I*, 2024 WL 4508450, at *11 ("To sufficiently allege a claim under 29 U.S.C. §§ 1106(a) and (b), Plaintiff must identify a transaction."); *Estay*, 2025 WL 2644782, at *6-7 (same).

The Complaint fails to satisfy that basic requirement. Plaintiff alleges only that Caliber "elected to use Forfeited Plan Assets as a substitute for future employer contributions to the Plan."

Compl. ¶ 130.  But he does not allege that forfeitures were ever removed from the Plan or retained by Caliber.  To the contrary, Plaintiff concedes that forfeitures are "retained in the Plan and . . . used to reduce future employer contributions."  *Id*. ¶ 40.  Such intra-Plan transfers are neither "prohibited" nor a "transaction" under 29 U.S.C. § 1106, as numerous courts have held when dismissing similar claims.  *See, e.g.*, *Brown*, slip op., at 24 (The "alleged allocation of forfeitures to employer contributions is merely an interplan reallocation of plan assets which functions as a benefit to the plan and, therefore, is not a transaction within the contemplation of § 1106."); *Estay*, 2025 WL 2644782, at *6 ("The [c]ourt finds that the allocation of the [f]orfeitures is not a transaction as contemplated by § 1106."); *Barragan II*, 2025 WL 2383652, at *5 (dismissing prohibited transaction claim premised on forfeitures because the plaintiff "fails to identify any transaction that falls within § 1106(a)(1) or (b)"); *Dimou II*, 2025 WL 2611240, at *7 (same under § 1106(b)); *McWashington*, 2025 WL 1736765, at *16 ("the re-allocation of forfeited nonvested funds does not constitute a 'transaction' governed by ERISA § 406(b)(1)"); *Hutchins I*, 737 F. Supp. 3d at 868 (finding it is not a prohibited transaction where "forfeited amounts remain Plan assets and are merely reallocated to provide pension benefits to other employees through use as matching contributions").[11]

This conclusion aligns with the purpose of ERISA's prohibited transaction provisions, which are intended by Congress to cover "commercial bargains that present a special risk of plan underfunding because [such agreements] are struck with plan insiders, presumably not at arm's

---

[11] Plaintiff attempts to muddy the waters, alleging that Caliber "caused" prohibited transactions when administrative expenses were charged to participant accounts rather than paid from the forfeiture account.  *E.g.*, Compl. ¶ 132.  But Plaintiff is just playing a shell game.  Plaintiff does not allege that any amounts paid by the Plan to service providers were unreasonable, or even that the Plan should have not paid those expenses.  Instead, he just complains that they should have been paid from one account within the Plan instead of from others.  That is not a prohibited transaction.

length." *Spink*, 517 U.S. at 893.  In other words, transactions that "are potentially harmful to the plan" because they "could jeopardize the ability of the plan to pay promised benefits." *Id*.  That concern is not implicated here, as forfeitures were allocated to participant accounts and used to provide benefits.  Indeed, for these same reasons, the Supreme Court held in *Spink* that the mere "payment of benefits" is not a "transaction" prohibited by ERISA's prohibited transaction provisions.  *Spink*, 517 U.S. at 893-95.

Plaintiff's prohibited transaction claims fail as a matter of law and should be dismissed, as numerous other courts have done in rejecting identical claims.  *See, e.g.*, *Polanco*, 2025 WL 3003060, at *10 ("Because the intra-plan reallocation of forfeitures to cover employer contributions is a 'payment of benefits,' [] it is not a transaction within the meaning of § 1106."); *Madrigal*, 2025 WL 1299002, at *6-7 ("Because the reallocation of assets within the Plan is not enough to trigger § 1106, Plaintiff has failed to state a claim for relief."); *Barragan I*, 2024 WL 5165330, at *7 (no prohibited transaction where "the allegations demonstrate that the forfeited amounts remain as Plan assets and are reallocated to other Plan participants"); *Dimou I*, 2024 WL 4508450, at *11 ("reallocating forfeitures in the plan 'to provide pension benefits to other employees through use as matching contributions' is not a prohibited transaction").

III.    **Plaintiff's Anti-Inurement Claim (Count V) Fails As A Matter Of Law**

The Court should also dismiss Count V, which recasts Caliber's use of forfeitures to pay benefits to participants as a violation of ERISA's anti-inurement provision.  Compl. ¶¶ 133-38.  A growing number of courts have roundly rejected this exact claim.  *See Sievert*, 780 F. Supp. 3d at 879-80; *Hutchins I*, 737 F. Supp. 3d at 866; *Madrigal*, 2025 WL 1299002, at *5-6; *Barragan I*, 2024 WL 5165330, at *6; *Dimou I*, 2024 WL 4508450, at *10; *Naylor*, 2024 WL 4112322, at *7;

*Wright*, 2025 WL 1683642, at \*6-7; *Steen*, 2025 WL 2420725, at \*6; *Cano*, 2025 WL 2589567, at \*6; *Middleton*, 2025 WL 2229959, at \*17; *Fumich*, 2025 WL 2399134, at \*8.

ERISA's anti-inurement provision states that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of *providing benefits to participants in the plan* and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1) (emphasis added). Here, Plaintiff does not allege that forfeitures are removed from the Plan; rather, he takes issue with using forfeitures to offset Caliber's discretionary employer contributions. Compl. ¶ 136. What Plaintiff does not recognize, or perhaps fails to concede, is that using forfeitures as a source of discretionary employer contributions *for funding other participants'* retirement savings is "providing benefits to participants," precisely as ERISA intended. 29 U.S.C. § 1103(c)(1); *see Hutchins I*, 737 F. Supp. 3d at 866 (rejecting claim for violation of ERISA's anti-inurement provision because forfeited amounts "are used to pay pension benefits to Plan participants"); *Hughes Aircraft*, 525 U.S. at 442 (ERISA's "exclusive purpose" language "focuses exclusively on whether fund assets were used to pay pension benefits to plan participants"); *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 22 (2004) ("The [anti-inurement] provision demands only that plan assets be held for supplying benefits to plan participants.").

Here, Plaintiff "do[es] not allege that [Defendant] used any" Plan assets for any "purpose other than to pay its obligations" to participants. *Hughes Aircraft*, 525 U.S. at 443.[12] Nor does

---

[12] In *Hughes Aircraft*, the Supreme Court made clear that ERISA does not prohibit actions that are otherwise lawful simply because those actions may indirectly benefit the employer. 525 U.S. at 445-46; *see also Spink*, 517 U.S. at 892-93 (using surplus funds to offer early retirement benefits was lawful under ERISA); *Krohnengold v. N.Y. Life Ins. Co.*, 2022 WL 3227812, at \*10 (S.D.N.Y. Aug. 10, 2022) ("[A]llegations of 'indirect' benefits inuring to an employer are insufficient to state an anti-inurement claim under Section 403(c)(1).").

Plaintiff allege that any of the forfeited funds used to offset Caliber's discretionary contributions left the Plan. *See Fumich*, 2025 WL 2399134, at \*8; *Madrigal*, 2025 WL 1299002, at \*6; *Barragan*, 2024 WL 5165330, at \*6; *Wright*, 2025 WL 1683642, at \*4.  Thus, there is no ERISA violation.  *See, e.g.*, *Hughes Aircraft*, 525 U.S. at 443 (rejecting argument that employer violated anti-inurement provision by directing surplus plan assets toward funding a new benefit structure in the same plan); *Steen*, 2025 WL 2420725, at \*6 ("the internal reallocation of forfeited contributions within a plan, when conducted in accordance with plan terms, does not violate the anti-inurement provision because the assets remain inside the plan and continue to serve the interests of participants"); *Hutchins I*, 737 F. Supp. 3d at 866 ("The fact that HP benefits through the reduction in its future matching contributions does not make the use of forfeited amounts in this way a violation of the anti-inurement provision—the benefit that HP receives is incidental to the payment of pension benefits."); *Barragan I*, 2024 WL 5165330, at \*5 ("[W]hen a plaintiff do[es] not allege that [the defendant] used any of the assets for a purpose other than to pay its obligations to the Plan's beneficiaries, [the defendant] could not have violated the anti-inurement provision.") (citation omitted).

The Plan's use of forfeitures to fund discretionary employer contributions does not constitute a violation of ERISA's anti-inurement provision.  *See, e.g.*, *Fumich*, 2025 WL 2399134, at \*8; *Steen*, 2025 WL 2420725, at \*5-6.  Count V fails to state a claim and should be dismissed with prejudice.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss with prejudice the Complaint under Rule 12(b)(6).

Date:  November 17, 2025

Respectfully submitted,

*/s/  David J. Levy*
MORGAN, LEWIS & BOCKIUS LLP
David J. Levy
State Bar No. 12264850
1000 Louisiana Street, Suite 4000
Houston, TX  77002
Tel:  (713) 890-5170
Fax:  (713) 890-5001
david.levy@morganlewis.com

Jeremy P. Blumenfeld (*pro hac vice*)
2222 Market Street
Philadelphia, PA  19103
Tel:  (215) 963-5000
Fax:  (215) 963-5001
jeremy.blumenfeld@morganlewis.com

Mathew J. McKenna (*pro hac vice*)
One Federal Street
Boston, MA  02110
Tel:  (617) 341-7700
Fax:  (617) 341-7701
mathew.mckenna@morganlewis.com

Mitchell A. Knafo (*pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel:  (202) 739-3000
Fax:  (202) 739-3001
mitchell.knafo@morganlewis.com

*Attorneys for Defendant*