# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

<table>
<tr>
<td>

ROY FORDYCE, Individually and as a Representative of a Class of Participants and Beneficiaries of the Caliber Holdings LLC Retirement Savings Plan,

                 Plaintiff,

v.

WAND NEWCO 3, INC. d/b/a CALIBER COLLISION, and DOES 1-10 INCLUSIVE,

Defendant.

</td>
<td>

Case No. 4:25-cv-00997-ALM

</td>
</tr>
</table>

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiff Roy Fordyce ("Plaintiff"), individually and on behalf of the proposed Settlement Class, respectfully moves the Court for an order granting preliminary approval of the proposed class action settlement reached with Defendant Wand Newco 3, Inc. d/b/a Caliber Collision ("Caliber" or the "Company").

## INTRODUCTION

Plaintiff Roy Fordyce ("Plaintiff" or "Class Representative"), individually and as a representative of a class of participants and beneficiaries of the Caliber Holdings LLC Retirement Savings Plan (the "Plan"), respectfully submits this memorandum in support of his unopposed motion for entry of an order: (1) preliminarily approving the proposed class action settlement (the "Settlement") set forth in the Class Action Settlement Agreement (the "Settlement Agreement" or "SA"); (2) preliminarily certifying the proposed Settlement Class under Federal Rules of Civil Procedure 23(a) and 23(b)(1) for settlement purposes only; (3) appointing Plaintiff's counsel as Class Counsel; (4) approving the proposed form and manner of notice to the Settlement Class; (5) preliminarily approving the proposed Plan of Allocation; and (6) scheduling a Fairness Hearing.

Defendant Wand Newco 3, Inc. d/b/a Caliber Collision ("Defendant" or "Caliber") does not oppose the relief requested herein. A copy of the Settlement Agreement and its Exhibits A-F is attached as Exhibit 1 to the accompanying Declaration of Tulio D. Chirinos ("Chirinos Decl.").[1]

The Settlement provides for a payment of $750,000.00 (the "Gross Settlement Amount") into a qualified settlement fund for the benefit of a Settlement Class. No portion of the Gross Settlement Amount will revert to Defendant. The Settlement resolves Plaintiff's claims that the Plan's fiduciaries violated the Employee Retirement Income Security Act of 1974 ("ERISA") in their treatment of forfeited employer contributions ("Forfeited Plan Assets" or "forfeitures"), specifically, by using forfeitures to reduce Caliber's own contribution obligations while charging Plan administrative expenses to participants' accounts, and by permitting forfeitures to remain unallocated in plan-level suspense accounts at year end.

The Settlement is an excellent result for the Settlement Class when measured against the substantial risks of continued litigation. Although Plaintiff remains confident in the merits of his claims and believes they would have survived Defendant's fully briefed and pending motion to dismiss, the claims at issue arise in a developing and unsettled area of law under ERISA in which Defendant, like the defendants in dozens of similar cases pending nationwide, vigorously contests liability. Defendant has consistently maintained, among other things, that the Plan document expressly authorized the use of forfeitures to offset employer contributions and that a number of district courts have dismissed similar claims at the pleading stage. Had the Court accepted Defendant's arguments, the Settlement Class's recovery could have been $0. Even if the Court only accepted Defendant's arguments in part, the Settlement Class's recovery could have been

---

[1] All capitalized terms have the meaning assigned to them in the accompanying Settlement Agreement, unless otherwise specified herein.

confined to damages flowing from the fiduciaries' failure to timely use unallocated forfeitures—an amount Plaintiff's consulting expert preliminarily estimates at approximately $0.9 million inclusive of lost investment earnings. The $750,000 Gross Settlement Amount represents approximately 83% of the recovery in that scenario, and approximately 6% to 11% of the maximum damages under Plaintiff's most aggressive models, ratios that compare favorably with class action settlements routinely approved in this Circuit and with the settlements approved to date in materially similar ERISA forfeiture cases.

The Settlement was negotiated at arm's length by experienced counsel, with the benefit of a mediation before United States Magistrate Judge Zachary Hawthorn, informed by detailed Plan data drawn from the Plan's Forms 5500 and the Plan's recordkeeper and analyzed by Plaintiff's consulting expert, and reached while Defendant's motion to dismiss was fully briefed and pending and the Parties had exchanged extensive discovery requests. The Settlement was ultimately reached after Judge Hawthorn submitted a mediator's proposal of $750,000, an amount he believed was fair. Settlement benefits will be distributed without any claim forms: eligible current participants will receive their shares as automatic deposits into their Plan accounts, and eligible former participants will be mailed checks directly. This motion is not opposed by Defendant. Plaintiff therefore respectfully requests that the Court grant preliminary approval.

## BACKGROUND

### I.    PROCEDURAL HISTORY

#### A.    Pleadings

Plaintiff commenced this action on September 10, 2025, and filed the operative Amended Class Action Complaint on December 1, 2025 (ECF No. 12) (the "Complaint"). The Complaint alleges that the Plan's fiduciaries violated ERISA in their treatment of the Plan's forfeitures by

3

electing to use forfeitures to reduce Caliber's employer contribution obligations rather than to defray the administrative expenses that were charged to participants' Plan accounts, and by permitting forfeitures to remain unallocated in a plan-level suspense account at the end of each year. The Complaint asserts five counts on behalf of the Plan: breach of the fiduciary duty of loyalty, 29 U.S.C. § 1104(a)(1)(A) (Count I); breach of the fiduciary duty of prudence, 29 U.S.C. § 1104(a)(1)(B) (Count II); fiduciary self-dealing under 29 U.S.C. § 1106(b) (Count III); prohibited transactions benefiting a party in interest under 29 U.S.C. § 1106(a) (Count IV); and violation of ERISA's anti-inurement provision, 29 U.S.C. § 1103(c)(1) (Count V). The Complaint seeks relief on behalf of the Plan under ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, 1132(a)(2).

### B.   Defendant's Motion to Dismiss

Defendant moved to dismiss the Complaint in its entirety, contending principally that the Plan document expressly authorized the use of forfeitures to reduce Caliber's discretionary employer contributions, that Caliber acted consistently with the Plan's terms and applicable Treasury guidance, and that Plaintiff failed to state a plausible claim. ECF No. 15. Plaintiff opposed, maintaining that ERISA's duties of loyalty and prudence governed the fiduciaries' exercise of discretion over Plan forfeitures regardless of what the Plan document permitted, that the Complaint plausibly alleged a deficient fiduciary process, and that other courts have sustained materially similar claims. ECF No. 18. Defendant replied, and the motion was fully briefed. ECF No. 20.

Reflecting how rapidly the law in this area has developed, both Parties submitted multiple notices of supplemental authority apprising the Court of new forfeiture decisions issued around

the country, which have reached differing results. *See e.g.*, ECF No. 23, 26. The Court had not ruled on the motion to dismiss at the time the Parties reached the Settlement.

### C.    Discovery and Pre-Mediation Investigation

While the motion to dismiss was pending, the Parties exchanged extensive written discovery requests that would become due two weeks following the mediation. Had the case not settled, responding to that discovery, and the fact and expert discovery that would have followed, would have required substantial time and expense for both sides. In connection with mediation, the Parties also exchanged information concerning the Plan's forfeiture activity and expense structure, including data drawn from the Plan's Forms 5500 for plan years 2019 through 2024. Plaintiff retained a consulting expert, which prepared a preliminary forfeiture claim analysis modeling the Settlement Class's potential damages under multiple theories of recovery. Chirinos Decl. ¶¶ 11-12, 23. As a result, the Parties were well informed of the strengths and weaknesses of their respective positions, and of the realistic range of potential recovery, when they negotiated the Settlement.

### D.    Mediation and Settlement

On February 11, 2026, Chief United States District Judge Amos L. Mazzant referred this action to United States Magistrate Judge Zachary Hawthorn for mediation. ECF No. 22. The Parties submitted detailed mediation position statements and, on May 14, 2026, participated in an in-person mediation session before Judge Hawthorn. The negotiations were adversarial: Defendant vigorously contested both liability and the amount of any recoverable damages, including by disputing Plaintiff's expense and damages figures. The Parties did not reach agreement during the mediation on May 14, 2026. Following the session, Judge Hawthorn made a mediator's proposal

of $750,000, which both Parties considered and accepted. The Parties subsequently negotiated and executed the Settlement Agreement now before the Court. Chirinos Decl. ¶ 12.

## II.    OVERVIEW OF THE SETTLEMENT TERMS

### A.    Proposed Settlement Class

For settlement purposes only, the Parties stipulate to certification of the following non-opt-out Settlement Class under Rule 23(b)(1):

> All persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period.

SA § 1.46. The "Class Period" is the period September 10, 2019 through the date of the Preliminary Approval Order. SA § 1.12. There are approximately 54,000 Settlement Class Members. Chirinos Decl. ¶ 3.[2]

### B.    Monetary Relief

Under the Settlement, Defendant will pay a Gross Settlement Amount of $750,000.00 into an interest-bearing Qualified Settlement Fund. SA §§ 1.26, 4.4. The Settlement is non-reversionary: no portion of the Gross Settlement Amount will return to Defendant under any circumstance. SA § 1.29. Following any deductions for Court-approved attorneys' fees and costs, any Court-approved Case Contribution Award, and the Administrative Expenses of the Settlement, the Net Settlement Amount will be distributed to the Settlement Class in accordance with the Plan of Allocation. SA §§ 1.33, 5.1-5.4 & Ex. D.

---

[2] The Plan's 2024 Form 5500 filed with the Department of Labor list over 54,000 participants. However, Defense counsel has indicated the Plan's recordkeeper believes the class to be larger. A final class number is not known at this time, but it will not decrease below 54,000.

Payments will be made under a Plan of Allocation that distributes the Net Settlement Amount on a pro rata basis according to each Class Member's share of the administrative expenses borne during the Class Period, which is the measure of the harm alleged in the Complaint. No Class Member is required to submit a claim form. Eligible Class Members who are current participants will have their Plan accounts automatically credited with their allocations, invested in accordance with their existing investment elections (or the Plan's qualified default investment alternative); eligible former participants will be mailed checks directly at addresses updated through the National Change of Address database. A modest de minimis threshold ensures that the costs of distribution do not consume the smallest allocations, and any residual amounts (including uncashed checks) will be paid to the Plan to defray Plan expenses rather than returned to Defendant. Settlement payments are intended to be "restorative payments" within the meaning of IRS Revenue Ruling 2002-45. SA § 5.4, Ex. D.

### C.    Review by an Independent Fiduciary

Consistent with Prohibited Transaction Class Exemption 2003-39, Defendant will retain an Independent Fiduciary with no relationship to the Parties to review the Settlement on behalf of the Plan and to determine whether to authorize the release of the Plan's claims. SA §§ 1.27, 2.1. The Independent Fiduciary will provide its written determination no later than 30 days before the Fairness Hearing, and that determination will be filed with the Court in support of final approval. SA §§ 2.1.2, 2.1.5.

### D.    Release of Claims

In exchange for the Settlement consideration, Plaintiff, the Plan, and the Settlement Class will release the Released Parties from the claims asserted in the Complaint and other claims arising out of the same factual predicate, *i.e.,* claims arising out of (a) the use of any vested or unvested

7

employer contributions, including unvested employer contributions that were forfeited under the Plan; (b) the Plan's expenses, including the amount of such expenses and the charging of such expenses to the Plan or Plan participants; (c) the services provided to the Plan or the cost of those services; (d) the management, oversight, or administration of the Plan or its fiduciaries relating to the Plan's expenses or forfeitures; or (e) alleged breach of the duties of loyalty, care, prudence, or any other fiduciary duties, anti-inurement claims, or prohibited transactions relating to the Plan's administration, expenses or use of forfeitures. SA §§ 1.38-39. The scope of the release is appropriately tailored to the conduct at issue in the action.

### E.      Class Notice and Settlement Administration

Plaintiff and Class Counsel have selected Analytics Consulting LLC, an experienced settlement administrator, to administer the Settlement. The Settlement Administrator will send the Short Form Postcard Settlement Notice (SA Ex. B) to each Class Member by email where an address is available, and by first-class mail otherwise, using addresses supplied by the Plan's recordkeeper and updated through the National Change of Address database; emails that bounce will be followed by mailed notice, and returned mail will be skip-traced and re-mailed. SA §§ 1.50, 2.4. A long-form Notice (SA Ex. A), the Settlement Agreement, the Plan of Allocation, and other key documents will be posted on a dedicated Settlement Website, and a toll-free telephone line will be maintained. Because settlement payments are automatic, no claim form is required, and no Class Member can lose a benefit through inaction. SA §§ 1.28, 1.49, 2.4, 13.2.

### F.      Attorneys' Fees, Expenses, and Case Contribution Award

By separate motion to be filed at least 30 days before the objection deadline, so that Class Members may review and respond before objecting, Class Counsel will apply for an award of attorneys' fees not to exceed 33 1/3% of the Gross Settlement Amount, plus reimbursement of

litigation costs and expenses, and for a service award for the Class Representative not to exceed $5,000. SA §§ 1.5, 1.10, 6.1-6.2.[3] The Settlement is not contingent on the Court's approval of any particular amount of fees, expenses, or the Case Contribution Award; a reduction in any of these amounts will inure to the benefit of the Settlement Class. SA § 5.2.1.

## ARGUMENT

Federal courts favor the voluntary resolution of litigation through settlement, "[p]articularly in class action suits," where "there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). The "gravamen of an approvable proposed settlement is that it be fair, adequate, and reasonable and is not the product of collusion between the parties." *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (internal quotation marks omitted).

At the preliminary approval stage, the Court is not required to make definitive findings regarding the fairness of the Settlement and need only make an initial determination that the proposed Settlement is within the range of what may be found fair, adequate, and reasonable, such that notice should issue to the Class. *See* Manual for Complex Litigation (Fourth) § 21.632 (2004); *Glover v. Woodbolt Distribution, Ltd.*, 2012 U.S. Dist. LEXIS 159431, at *2 (S.D. Tex. Nov. 7, 2012); *In re OCA, Inc. Sec. & Derivative Litig.*, 2008 U.S. Dist. LEXIS 84869, at *37 (E.D. La. Oct. 17, 2008) ("As this motion is for preliminary approval . . . , the standards are not as stringent as those applied to a motion for final approval."). More precisely, the Court need only determine that it "will likely be able to" approve the Settlement as fair, reasonable, and adequate under Rule

---

[3] *See Purdie v. Ace Cash Express, Inc.*, No. CIV.A. 301CV1754L, 2003 U.S. Dist. LEXIS 22547, at *24 (N.D. Tex. Dec. 11, 2003) (approving $16,000 class representative award and explaining that "[c]ourts in this circuit have recognized and approved incentive awards for class representatives").

23(e)(2) and certify the Settlement Class for purposes of judgment, such that notice should issue to the Class. Fed. R. Civ. P. 23(e)(1)(B).

## I.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

The Fifth Circuit considers six factors in determining whether to approve a class settlement: (1) whether the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs prevailing on the merits; (5) the range of possible recovery and the certainty of damages; and (6) the opinions of class counsel, the class representatives, and absent class members. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). The 2018 amendments to Rule 23(e) did not displace this test; rather, the Court evaluates the *Reed* factors together with the four considerations enumerated in Rule 23(e)(2), which "overlap significantly with the *Reed* factors," such that the Court "consider[s] the Rule 23(e)(2) requirements as informed by the *Reed* factors." *Corrente v. Charles Schwab Corp.*, No. 4:22-cv-470, 2025 U.S. Dist. LEXIS 230708, at *43-44 (E.D. Tex. Nov. 24, 2025) (Mazzant, J.) (citing *C.C. & L.C. v. Baylor Scott & White Health*, 2022 U.S. Dist. LEXIS 174005, at *5-6 (E.D. Tex. Sept. 26, 2022)); *see also Wilson v. Frontier Commc'ns Parent, Inc.*, No. 3:24-CV-1418, 2025 U.S. Dist. LEXIS 163908, at *18-19 (N.D. Tex. June 20, 2025). "When considering these factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie*, 2003 U.S. Dist. LEXIS 22547, at *16; *Lee v. Metrocare Servs.*, No. 3:13-cv-2349-O, 2015 U.S. Dist. LEXIS 194001, at *7 (N.D. Tex. July 1, 2015) (same). The Court "should not decide the merits of the action or attempt to substitute its own judgment for that of the parties." *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983). Here, the *Reed* factors and Rule 23(e)(2) favor approval.

### A.  The Settlement Was Obtained Through Arm's-Length Negotiations

As discussed above, the Settlement was obtained (a) pursuant to Court-ordered mediation; (b) with the assistance of an experienced magistrate, Judge Zachary Hawthorn; (c) after consideration of the mediator's proposal over several days. *See* supra at Background § I. D. This inquiry implicates both Rule 23(e)(2)(B), which asks whether the settlement "was negotiated at arm's length," and the first *Reed* factor, concerning the existence of fraud or collusion. *Kostka v. Dickey's Barbecue Rests., Inc.*, No. 3:20-cv-03424-K, 2022 U.S. Dist. LEXIS 188186, at *31-32 (N.D. Tex. Oct. 14, 2022). At all times, the negotiations were conducted at arm's length. Chirinos Decl. ¶¶ 11-12. Accordingly, the first factor strongly weighs in favor of approval of the Settlement, as there is no evidence of any fraud or collusion, and the Court "may presume that no fraud or collusion occurred . . . in the absence of any evidence to the contrary." *C.C.,* 2022 U.S. Dist. LEXIS 174005, at *8; *see also Reed*, 703 F.2d at 172; *Halleen v. Belk, Inc.*, No. 4:16-cv-00055-ALM, 2018 U.S. Dist. LEXIS 214015, at *8 (E.D. Tex. Dec. 20, 2018) (finding that this factor is satisfied where the settlement was negotiated by "experienced attorneys on both sides" and "the parties and their attorneys agree that the settlement is a fair and reasonable resolution of a bona fide dispute."); *Billitteri v. Sec. Am., Inc.*, No. 3:09-CV-01568-F, 2011 U.S. Dist. LEXIS 92713, at *44 (N.D. Tex. Aug. 4, 2011) ("As for the first factor, there is no evidence that the settlement was obtained by fraud or collusion. On the contrary, this settlement was diligently negotiated after a long and hard-fought process that culminated in ultimately successful mediation[.]").

### B.  The Litigation Was Complex, and Would Have Been Costly and Lengthy

The complexity of this ERISA class action also favors approval of the Settlement. *See Mertens v. Hewitt Associates*, 508 U.S. 248, 262 (1993) (ERISA is "an enormously complex and detailed statute . . . ."); *Cotton*, 559 F.2d at 1331 ("[C]lass action suits have a well deserved

11

reputation as being most complex . . . .[S]ettlements contribute greatly to the efficient utilization of our scarce judicial resources[.]"). Had the Parties rejected Judge Hawthorn's mediator's proposal, the Parties faced significant discovery, additional motion practice, and a potentially complicated and costly trial involving multiple experts, and a very large class. This would have involved a significant financial burden for the Parties and a significant judicial burden for the Court. Moreover, after all this, it is likely that any final decision in the case would have been appealed by the non-prevailing party or parties. *See* Chirinos Decl. ¶¶ 7, 22-28; accord, *Tibble v. Edison Int'l*, 843 F.3d 1187, 1191-92 (9th Cir. 2016) (outlining appellate history of decade-long ERISA breach of fiduciary duty case); *Tussey v. ABB, Inc.*, 850 F.3d 951, 962 (8th Cir. 2017) ("*Tussey II*") (vacating trial court judgment for the second time in ERISA breach of fiduciary duty case in its eleventh year). Thus, one of the main benefits of the Settlement is that it provides immediate relief to Class Members, within less than two years of commencement of the action, and avoids potentially years of delay with an uncertain outcome. *See Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("The agreement also provides relief for the class sooner than continued litigation would.").

### C.     The Parties Obtained Sufficient Information to Evaluate the Settlement

Although the amount of litigation remaining was substantial, this is not a situation where a settlement was hastily negotiated at the outset of the case. The Parties negotiated with the benefit of full briefing on Defendant's motion to dismiss (supplemented by notices of supplemental authority as the law developed), the Parties exchanged discovery requests, six years of Form 5500 data, and Plaintiff engaged a consultant to conduct a preliminary expert damages analysis modeling multiple theories of recovery. *See supra* at Background § I. B-D. At this stage, the Parties "possess[ed] ample information with which to evaluate the merits of the competing positions."

12

*Billitteri*, 2011 U.S. Dist. LEXIS 92713, at *48 (quoting *Ayers*, 358 F.3d at 369); *see also Cotton*, 559 F.2d at 1332 (noting that cases can be "over discovered" and "the lack of [a voluminous record] does not compel the conclusion that insufficient discovery was conducted."); *Newby*, 394 F.3d at 305 ("The scope of discovery to be conducted in each case rests within the sound discretion of the district court.").

### D.    The Settlement Class Faced Risks on the Merits

Although Plaintiff believes there is strong legal and factual support for his claims, there is risk "inherent in taking any litigation to completion." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 849 (E.D. La. 2007). Plaintiff's claims arise in a rapidly developing area of ERISA law in which there is not yet controlling appellate authority and in which the district courts have divided. A number of courts have dismissed similar forfeiture claims at the pleading stage, crediting the view that a plan's express authorization to apply forfeitures toward employer contributions defeats the claim. *See e.g.*, *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851 (N.D. Cal. 2024), *appeal pending*, No. 25-826 (9th Cir.); *Dimou v. Thermo Fisher Scientific, Inc.*, 2025 U.S. Dist. LEXIS 178980 (S.D. Cal. Sept. 9, 2025). Other courts, however, have sustained similar claims, recognizing that the exercise of fiduciary discretion over forfeitures remains subject to ERISA's duties of loyalty and prudence. *See e.g.*, *Perez-Cruet v. Qualcomm Inc.*, 2024 U.S. Dist. LEXIS 93522 (S.D. Cal. May 24, 2024); *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935 (N.D. Cal. 2024). Plaintiff is confident his well-pleaded claims fall on the correct side of that divide. But the division of authority, the absence of binding precedent, and Defendant's pending motion to dismiss meant that continued litigation carried a genuine risk that the Settlement Class would recover nothing.

Even had Plaintiff defeated the motion to dismiss and established a breach, he would still have had to prove a resulting loss to the Plan on a full evidentiary record. *See McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir. 1995) (claim faltered because "the plaintiffs failed to prove a loss to the plan") (emphasis in original); *cf. Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 656 (N.D. Tex. 2010) ("[T]he difficulty of proving causation . . . is real."). Defendant disputed Plaintiff's damages methodology, contending that the expenses actually borne by participants were materially lower than alleged, a dispute that, even if Plaintiff prevailed on liability, could have substantially reduced any recovery. These risks are not hypothetical, and they weigh in favor of approval.

### E. The Monetary Relief Compares Well to the Realistic Recovery and to Other Settlements

Rule 23(e)(2)(C) directs the Court to assess whether the relief is adequate "taking into account: the costs, risks, and delay of trial and appeal," an inquiry that mirrors the fourth and fifth *Reed* factors. The benefits of compromise outweigh the risks of pursuing a potentially greater, but uncertain, recovery. *See Reed*, 703 F.2d at 175 ("[U]ncertainty is a catalyst of settlement."); *Cotton*, 559 F.2d at 1330 ("The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.") (internal quotation marks omitted). Measured against the recovery the Settlement Class realistically could have achieved, particularly in light of Defendant's argument that the Plan document authorized the challenged use of forfeitures, the $750,000 Gross Settlement Amount is an excellent result. As explained in the Introduction, the Gross Settlement Amount represents approximately 6% to 11% of the maximum damages under Plaintiff's most aggressive models and

14

nearly 83% of the recovery if the Court had narrowed Plaintiff's claims to the unallocated forfeiture claims.

The Settlement also compares favorably to other ERISA forfeiture settlements approved or presented for approval to date. *See Rodriguez v. Intuit Inc.*, No. 5:23-cv-05053-PCP, ECF No. 76-1 at 17 (N.D. Cal. May 16, 2025) (settlement representing approximately 13% of plaintiff's full damages theory); *Buescher v. North American Lighting, Inc.*, No. 2:24-cv-02076, ECF No. 38 at 11 (C.D. Ill. Mar. 13, 2026) (settlement representing approximately 10.2% of estimated losses). And the recovery here sits comfortably within, indeed, toward the favorable end of, the range courts in this Circuit and beyond routinely approve. *See Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 345 n.19 (N.D. Tex. 2011) (approving settlement of "about 2 to 3 percent" of class members' losses); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (9% reasonable); *In re Newbridge Networks Sec. Litig.*, 1998 U.S. Dist. LEXIS 23238, at *8 (D.D.C. Oct. 23, 1998) (6% to 12% "within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (typical class recoveries of 5.5% to 6.2% of estimated losses).

**F.      The Class Representative and Class Counsel Believe the Settlement Is Fair**

Finally, this factor confirms that "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid," *Reed*, 703 F.2d at 175, and where competent counsel determines a settlement is in the class's best interest, "the attorney's views must be accorded great weight", *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978). Proposed Class Counsel are experienced in ERISA and complex class litigation, developed the forfeiture claims at issue from the Plan's public filings and recordkeeper data, fully briefed the

opposition to Defendant's motion to dismiss, and negotiated the Settlement through a contested, Court-ordered mediation. Chirinos Decl. ¶¶ 8-9, 14-20. Both Class Counsel and the Class Representative firmly believe the Settlement is fair, reasonable, and adequate, and that conclusion is entitled to substantial weight. *Id*. ¶ 22.

## II.  THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED

The Court must "direct notice in a reasonable manner to all class members who would be bound" by the Settlement. Fed. R. Civ. P. 23(e)(1)(B). For a class certified under Rule 23(b)(1), the Court may direct appropriate notice to the class. Fed. R. Civ. P. 23(c)(2)(A). That is precisely the type of notice proposed here.

The proposed notice program satisfies these standards and Due Process. The Settlement Administrator will provide direct notice to each Class Member by email or first-class mail, supported by address updating, skip tracing, a Settlement Website, and a toll-free line, *see* supra at Background § I. E. The Settlement Notices present a fair recital of the subject matter and the proposed terms, afford the Class an opportunity to be heard, and inform Class Members of the place and time of the preliminary approval hearing. *Id*. The Fifth Circuit has found similar notices reasonable. *See Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429–30 (5th Cir. 1977) (finding notice adequate where it "described the litigation and summarized the proposed settlement terms. The notices also told of the time and place of the settlement hearing and the option of being excluded from the class."). Because relief is automatic, no claim form is required. This program is more than sufficient to satisfy Rule 23 and Due Process and has been approved by this Court in other class action settlements. *See Corrente*, 2025 U.S. Dist. LEXIS 230708, at *37-38 (Mazzant, J.) (approving comparable notice program where the notice program included "direct notice to all reasonably identifiable members of the Settlement Class via email or post card, along with a

16

dedicated website, class helpline, and helpdesk support where the Settlement Class could learn more about their legal rights, the notices, and implications of the litigation . . . .”).

## III.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The Court should certify the Settlement Class for settlement purposes under Rule 23. At this stage, the question is whether the Court “will likely be able to . . . certify the class for purposes of judgment on the proposal.” Fed. R. Civ. P. 23(e)(1)(B); *see Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 744 (E.D. Tex. 2007) (before approving a class settlement, the court must certify the class, appoint class counsel, and satisfy the notice requirements). A settlement class must satisfy the four requirements of Rule 23(a) and one prerequisite of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345–46 (2011). In the settlement context, the Court “need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial,” *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997), so the requirements “are more readily satisfied in the settlement context,” *White v. Nat’l Football League*, 822 F. Supp. 1389, 1402 (D. Minn. 1993).

### A.   The Proposed Settlement Class Satisfies Rule 23(a)

**Numerosity.** The Settlement Class includes at least 54,000 participants and beneficiaries, dispersed nationwide—far exceeding the “100 to 150 person range” that generally satisfies numerosity. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999).

**Commonality.** “In general, the question of defendants’ liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries.” *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 452 (S.D.N.Y. 2004). The claims here turn on common questions—whether the fiduciaries’ uniform, Plan-wide

17

decisions regarding the use of forfeitures complied with ERISA—that will generate common answers for the entire Class. Fed. R. Civ. P. 23(a)(2); *Dukes*, 564 U.S. at 350.

**Typicality.** Plaintiff's claims arise from the same course of conduct and rest on the same legal theories as the claims of every other Class Member. Indeed, "given the representative nature of suit pursuant to ERISA 502(a)(2), each plan participant/class member's claims are necessarily typical of those of the rest of the class." *In re Enron Corp.*, 2006 U.S. Dist. LEXIS 43145, at *53 (S.D. Tex. June 7, 2006) (quoting *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70 (E.D. Va. 2006)) (cleaned up).

**Adequacy.** The adequacy requirement is also satisfied because Plaintiff has been actively involved in this lawsuit and has no conflicts with the Settlement Class. Chirinos Decl. ¶ 30. All seek to recover Plan losses arising from the same conduct under a uniform allocation formula and Plaintiff has no conflicts with other Class Members. Fed. R. Civ. P. 23(a)(4). And proposed Class Counsel, Chirinos Law Firm PLLC, Milberg PLLC, Bloom Legal LLC, and Kendall Law Group, PLLC are experienced in ERISA and complex class litigation and have vigorously prosecuted this action. Chirinos Decl. ¶ 19.

## B.    The Proposed Class Satisfies Rule 23(b)(1)

In addition to meeting the requirements of Rule 23(a), the proposed Settlement Class satisfies Rule 23(b)(1), a non-opt-out class. Under Rule 23(b)(1), a class may be certified if prosecution of separate actions by individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class

members that would establish incompatible standards of conduct for the

party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical

18

matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). Settlement Class Members are still permitted to object to the Settlement, SA, § 2.2.7, and requirements for filing an objection are set out in the Notices and proposed Preliminary Approval Order. SA, Exs. A-C.

The breach of fiduciary duty and statutory violation claims here plainly satisfy this test because they are brought derivatively on behalf of the Plan under ERISA, *see* 29 U.S.C. §§ 1109 and 1132(a)(2), and the outcome will necessarily affect the Settlement Class Members and the Plan's fiduciaries. *See Godfrey v. Greatbanc Trust Co.*, 2021 U.S. Dist. LEXIS 31932, at *20-22 (N.D. Ill. Feb. 21, 2021). Indeed, "ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class." *In re Enron Corp.*, 2006 U.S. Dist. LEXIS 43145, at *64-65 (quoting *DiFelice*, 235 F.R.D. at 80).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order (1) preliminarily approving the Settlement; (2) preliminarily certifying the Settlement Class under Rules 23(a) and 23(b)(1); (3) appointing Chirinos Law Firm PLLC, Milberg PLLC, Bloom Legal LLC, and Kendall Law Group, PLLC as Class Counsel; (4) approving the form and manner of the Settlement Notices; (5) preliminarily approving the Plan of Allocation; and (6) scheduling a Fairness Hearing.

Date: June 26, 2026                                    Respectfully submitted,


                                                       */s/ Tulio D. Chirinos*

                                                       **CHIRINOS LAW FIRM PLLC**
                                                       Tulio D. Chirinos (*pro hac vice*)
                                                       20283 State Road 7, Suite 592
                                                       Boca Raton, FL 33498
                                                       Telephone:  (561) 299-6334
                                                       tchirinos@chirinoslawfirm.com

                                                       **KENDALL LAW GROUP, PLLC**
                                                       Joe Kendall
                                                       Texas Bar No. 11260700
                                                       3811 Turtle Creek Blvd., Suite 825
                                                       Dallas, Texas 75219
                                                       Telephone:  214-744-3000
                                                       Facsimile:  214-744-3015
                                                       jkendall@kendalllawgroup.com

                                                       **BLOOM LEGAL LLC**
                                                       Seth J. Bloom
                                                       Texas Bar No. 24094426
                                                       825 Girod Street, Suite A
                                                       New Orleans, Louisiana 70113
                                                       Telephone:  (504) 599-9997
                                                       Email:  sjb@bloomlegal.com

                                                       **MILBERG, PLLC**
                                                       Alexandr Rudenco (*pro hac vice*)
                                                       800 S. Gay St., Suite 1100
                                                       Knoxville, TN 37929
                                                       Tel: (865) 247-0080
                                                       arudenco@milberg.com

                                                       *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on June 26, 2026, a true and correct copy of the foregoing document was filed via the Court's CM/ECF System, which will provide electronic notice to all counsel of record.

*/s/ Tulio D. Chirinos*
Tulio D. Chirinos

**CERTIFICATE OF CONFERENCE PURSUANT TO LOCAL RULE 7(i)**

Pursuant to Local Rule CV-7(i), undersigned counsel certifies that Tulio D. Chirinos, counsel for Plaintiff, conferred with Mathew J. McKenna, counsel for Defendant, with respect to this Motion on June 26, 2026 and satisfied Local Rule CV-7(h)'s meet and confer requirement. Defendant does not oppose the relief sought.

*/s/ Tulio D. Chirinos*
Tulio D. Chirinos