**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| ROY FORDYCE, Individually and as a Representative of a Class of Participants and Beneficiaries of the Caliber Holdings LLC Retirement Savings Plan,<br><br>Plaintiff,<br><br>v.<br><br>WAND NEWCO 3, INC. d/b/a CALIBER COLLISION, and DOES 1-10 INCLUSIVE,<br><br>Defendant. | Case No. 4:25-cv-00997-ALM |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiff Roy Fordyce ("Plaintiff"), individually and on behalf of the proposed Settlement Class, respectfully moves the Court for an order granting final approval of the proposed class action settlement reached with Defendant Wand Newco 3, Inc. d/b/a Caliber Collision ("Caliber" or the "Company").

# TABLE OF CONTENTS


INTRODUCTION .......... 1

BACKGROUND .......... 3

I. THE LITIGATION AND SETTLEMENT NEGOTIATIONS .......... 3

II. THE SETTLEMENT TERMS .......... 4

III. PRELIMINARY APPROVAL AND IMPLEMENTATION OF THE NOTICE PROGRAM .......... 5

ARGUMENT .......... 7

I. PLAINTIFF AND THE SETTLEMENT CLASS HAVE ARTICLE III STANDING .......... 7

II. THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED .......... 9

A. The Settlement Class Is Ascertainable. .......... 9

B. The Requirements of Rule 23(a) Are Satisfied. .......... 10

C. The Requirements of Rule 23(b)(1) Are Satisfied. .......... 11

III. THE COURT SHOULD CONFIRM THE APPOINTMENT OF CLASS COUNSEL .......... 12

IV. NOTICE SATISFIED RULE 23, DUE PROCESS, AND CAFA .......... 12

V. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE .......... 14

A. Plaintiff and Class Counsel Adequately Represented the Settlement Class (Rule 23(e)(2)(A)). .......... 15

B. The Settlement Was Negotiated at Arm's Length and Is Free of Collusion (Rule 23(e)(2)(B); Reed Factor 1). .......... 16

C. The Relief Is Adequate (Rule 23(e)(2)(C)). .......... 16

1. The costs, risks, and delay of trial and appeal (Reed Factors 2–5). .......... 16

2. The method of distributing relief is effective. .......... 19

3. The terms of the proposed attorneys' fee award are reasonable .......... 20

4. There are no side agreements (Rule 23(e)(3)). .......... 20

D. The Settlement Treats Class Members Equitably (Rule 23(e)(2)(D)) .......... 20

E. Class Counsel, the Class Representative, and Absent Class Members Support the Settlement (Reed Factor 6). .......... 21

F. The Independent Fiduciary's Review Provides an Additional Safeguard. .......... 21

VI. THE PLAN OF ALLOCATION SHOULD BE FINALLY APPROVED .......... 22

CONCLUSION .......... 23

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......... 9

*Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727 (5th Cir. 2023) .......... 11

*Ayers v. Thompson*, 358 F.3d 356 (5th Cir. 2004) .......... 16, 17

*Blackmon v. Zachary Holdings, Inc.*, No. SA-20-CV-00988-JKP, 2022 U.S. Dist. LEXIS 139417 (W.D. Tex. Aug. 5, 2022) .......... 16, 22

*Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914 (5th Cir. 2023) .......... 9

*Brooks v. CenterPoint Energy, Inc.*, No. 4:24-cv-2940 (S.D. Tex.) .......... 19

*Buescher v. N. Am. Lighting, Inc.*, No. 2:24-cv-02076-CSB-EIL (C.D. Ill.) .......... 19, 22

*Celeste v. Intrusion Inc.*, No. 4:21-CV-307-SDJ, 2022 U.S. Dist. LEXIS 226841 (E.D. Tex. Dec. 16, 2022) .......... 19, 20, 22

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .......... 8

*Cole v. Gen. Motors Corp.*, 484 F.3d 717 (5th Cir. 2007) .......... 8

*Corrente v. Charles Schwab Corp.*, No. 4:22-cv-470, 2025 WL 3270219, 2025 U.S. Dist. LEXIS 230708 (E.D. Tex. Nov. 24, 2025) .......... passim

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) .......... 21

*Deepwater Horizon, In re*, 739 F.3d 790 (5th Cir. 2014) .......... 8

*Deepwater Horizon, In re*, 785 F.3d 1003 (5th Cir. 2015) .......... 8

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) .......... 8

*Dimou v. Thermo Fisher Sci. Inc.*, No. 23-cv-1732-BJC-JLB, 2025 U.S. Dist. LEXIS 178980 (S.D. Cal. Sept. 9, 2025) .......... 17

*Earl v. Boeing Co.*, 339 F.R.D. 391 (E.D. Tex. 2021), *rev'd on other grounds*, 53 F.4th 897 (5th Cir. 2022) .......... 9

*Estay v. Ochsner Clinic Found.*, 2026 WL 809570 (E.D. La. Mar. 24, 2026) .......... 18

*Flecha v. Medicredit, Inc.*, 946 F.3d 762 (5th Cir. 2020) .......... 8, 10

*Frank v. Gaos*, 586 U.S. 485 (2019) .......... 7

*Hutchins v. HP Inc.*, 737 F. Supp. 3d 851 (N.D. Cal. 2024) .......... 17

*Ibe v. Jones*, 836 F.3d 516 (5th Cir. 2016) .......... 10

*IMAX Sec. Litig., In re*, 283 F.R.D. 178 (S.D.N.Y. 2012) .......... 22

*John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443 (5th Cir. 2007) .......... 9

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-cv-03698-NC, 2018 U.S. Dist. LEXIS 80219 (N.D. Cal. May 11, 2018) .......... 19

*Jones v. Singing River Health Servs. Found.*, 865 F.3d 285 (5th Cir. 2017) .......... 16

*Katrina Canal Breaches Litig., In re*, 628 F.3d 185 (5th Cir. 2010) .......... 13

*Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672 (7th Cir. 2009) .......... 8

*LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008) .......... 8

*Maher v. Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983) .......... 15, 18

*McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234 (5th Cir. 1995) .......... 18

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) .......... 13

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) .......... 10

*Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982) .......... 19

*Perez-Cruet v. Qualcomm Inc.*, No. 23-cv-1890-BEN (MMP), 2024 U.S. Dist. LEXIS 93522 (S.D. Cal. May 24, 2024) .......... 18

*Purdie v. Ace Cash Express, Inc.*, No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547 (N.D. Tex. Dec. 11, 2003) .......... 15

*Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) .......... 7, 14

*Rite Aid Corp. Sec. Litig., In re*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) .......... 19

*Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935 (N.D. Cal. 2024) .......... 18

*Rodriguez v. Intuit Inc.*, No. 5:23-cv-05053-PCP (N.D. Cal.) .......... 19

*Sims v. BB&T Corp.*, No. 1:15-CV-732, 2019 U.S. Dist. LEXIS 75837 (M.D.N.C. May 6, 2019) .......... 19

*Smith v. Crystian*, 91 F. App'x 952 (5th Cir. 2004) .......... 17

*Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020) .......... 8

*Tibble v. Edison Int'l*, 843 F.3d 1187 (9th Cir. 2016) (en banc) .......... 17

*Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) .......... 17

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012) .......... 17

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .......... 10

*Ward v. Hellerstedt*, 753 F. App'x 236 (5th Cir. 2018) .......... 10

**Statutes**

28 U.S.C. § 1715 .......... 14

29 U.S.C. § 1106 .......... 3

ERISA § 409, 29 U.S.C. § 1109 .......... 11

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) .......... 8, 11

**Rules**

Fed. R. Civ. P. 23 .......... passim

**Regulations**

Prohibited Transaction Class Exemption 2003-39, 68 Fed. Reg. 75,632 (Dec. 31, 2003), *as amended*, 75 Fed. Reg. 33,830 (June 15, 2010) .......... 2, 5, 21, 22

## INTRODUCTION

Plaintiff Roy Fordyce ("Plaintiff" or "Class Representative"), individually and as a representative of the participants and beneficiaries of the Caliber Holdings LLC Retirement Savings Plan (the "Plan"), respectfully moves for entry of the proposed Final Approval Order and Judgment (Settlement Agreement Exhibit E, updated to reflect the current record) (1) granting final approval of the $750,000 class action settlement (the "Settlement") set forth in the Class Action Settlement Agreement ("Settlement Agreement" or "SA") (ECF No. 36-2); (2) finally approving the Plan of Allocation; (3) confirming certification of the Settlement Class under Federal Rules of Civil Procedure 23(a) and 23(b)(1); (4) finding that the notice program satisfied Rule 23 and due process; and (5) dismissing this action with prejudice. Defendant Wand Newco 3, Inc. d/b/a Caliber Collision ("Defendant" or "Caliber") does not oppose this motion.[1]

On September 14, 2026, the Court preliminarily approved the Settlement, conditionally certified the Settlement Class, approved the form and manner of notice, preliminarily approved the Plan of Allocation, and set the Fairness Hearing for January 14, 2027. ECF No. 39 ("Preliminary Approval Order" or "PAO"). In doing so, the Court preliminarily found that the Settlement was "negotiated vigorously and at arm's-length" with the help of Magistrate Judge Zack Hawthorn, that the $750,000 recovery "is fair, reasonable, and adequate, taking into account the costs, risks, and delay of litigation, trial, and appeal," and that the method of distribution "is efficient, relying on Defendant's records and requiring no filing of claims." PAO ¶ 4(a), (d).

---

[1]Capitalized terms not otherwise defined have the meanings given in the Settlement Agreement. Plaintiff's separate motion for attorneys' fees, litigation costs, and a Case Contribution Award, filed concurrently, is supported by the same declarations and is not a condition of the Settlement. SA § 12.3.

Nothing since then has undermined those findings. The Settlement Administrator, Analytics Consulting LLC ("Analytics"), carried out the Court-approved notice program on schedule: it posted the Long Form Settlement Notice and key case documents on the Settlement Website by October 16, 2026, and beginning October 24, 2026 sent the Short Form Postcard Settlement Notice by email and first-class mail to all 113,156 identified Settlement Class Members, successfully reaching all but 215 of them (approximately 99.8%). Declaration of Jeffrey Mitchell of Analytics ("Analytics Decl.") ¶¶ 7–12. As of the date of this filing, neither Analytics nor Class Counsel is aware of any objection to the Settlement. *Id.* ¶ 15; Chirinos Decl. ¶ 14.[2] The Independent Fiduciary's review under Prohibited Transaction Class Exemption 2003-39 ("PTE 2003-39") is underway, and its determination is due no later than December 15, 2026. SA §§ 2.1.2, 11.4.

Measured against the risks Plaintiff faced, the Settlement is an excellent result. It recovers approximately 83% of the damages Plaintiff's consulting expert estimated under the narrower unallocated-forfeiture theory (inclusive of lost earnings), and roughly 6% to 11% of the maximum damages under Plaintiff's most aggressive models, in an area of ERISA law where courts have divided and where Defendant's fully briefed motion to dismiss threatened to end the case with no recovery. Benefits will be paid automatically, without claim forms, and no portion of the fund will revert to Defendant.

Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement.

[2]The objection deadline is December 15, 2026. PAO ¶ 11. Plaintiff will file the Independent Fiduciary's written determination, address any objections, and update the notice and objection statistics in a supplemental submission on or before January 7, 2027, as permitted by Paragraphs 11 and 12 of the Preliminary Approval Order.

# BACKGROUND

## I. THE LITIGATION AND SETTLEMENT NEGOTIATIONS

Plaintiff filed this action on September 10, 2025, and filed the operative Amended Class Action Complaint on December 1, 2025. ECF No. 12. The Complaint alleges that the Plan's fiduciaries violated ERISA by using forfeited employer contributions to reduce Caliber's own contribution obligations rather than to defray administrative expenses charged to participants' accounts, and by allowing forfeitures to remain unallocated in a plan-level suspense account at year end. It asserts claims for breach of the duties of loyalty and prudence, prohibited transactions under 29 U.S.C. § 1106(a) and (b), and violation of ERISA's anti-inurement provision. *Id.*

Defendant moved to dismiss the Complaint in its entirety, ECF No. 15; Plaintiff opposed, ECF No. 18; and Defendant replied, ECF No. 20. Both sides then filed notices of supplemental authority as new, and conflicting, forfeiture decisions issued around the country. *See, e.g.*, ECF Nos. 23, 26. While the motion was pending, Plaintiff served document requests, interrogatories, a Rule 30(b)(6) deposition notice, notices of two Caliber benefits executives' depositions, and third-party subpoenas to the Plan's recordkeepers Transamerica and Prudential on April 20, 2026, and the Parties exchanged Plan data, including Forms 5500 for plan years 2019 through 2024, and Plaintiff's consulting expert modeled the Settlement Class's potential damages under several theories. Declaration of Tulio D. Chirinos in Support of Final Approval and Fee Motions ("Chirinos Decl.") ¶¶ 4–6.

On February 11, 2026, the Court referred the case to Magistrate Judge Zack Hawthorn for mediation. ECF No. 22. After exchanging detailed mediation statements, the Parties mediated in person on May 14, 2026, but did not reach agreement. Judge Hawthorn then issued a mediator's proposal of $750,000, which both sides accepted. ECF No. 33. The Parties negotiated the

Settlement Agreement over the following weeks, and Plaintiff moved for preliminary approval on June 26, 2026. ECF No. 36; Chirinos Decl. ¶¶ 7–8.

## II. THE SETTLEMENT TERMS

**The Settlement Class.** The Court conditionally certified a non-opt-out Settlement Class under Rule 23(b)(1) consisting of: "[a]ll persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period." PAO ¶ 1; SA § 1.46. The Class Period runs from September 10, 2019 through September 14, 2026, the date of the Preliminary Approval Order. SA § 1.13. The Plan's recordkeepers identified 113,156 Settlement Class Members. Analytics Decl. ¶ 5.

**Monetary relief.** Defendant has deposited the $750,000 Gross Settlement Amount into an interest-bearing Qualified Settlement Fund. SA §§ 1.26, 4.4; Analytics Decl. ¶ 4. No portion of the fund will revert to Defendant. After deduction of Court-approved attorneys' fees and costs, any Case Contribution Award, and Administrative Expenses, the Net Settlement Amount will be distributed under the Plan of Allocation. SA §§ 1.29, 5.2.

**Plan of Allocation.** The Net Settlement Amount will be allocated pro rata according to each Class Member's share of the administrative expenses deducted from his or her Plan account during the Class Period (the "Expense Balance"), which tracks the harm alleged in the Complaint. SA Ex. D § II.B–C. Current participants with Active Accounts will have their shares deposited directly into their Plan accounts as restorative payments, invested according to their existing elections or the Plan's qualified default investment alternative; former participants will receive checks mailed to addresses updated through the National Change of Address database. *Id.* § II.F–

G. Modest de minimis thresholds ($1.00 for Active Account Members and $10.00 for Former Participants) prevent distribution costs from consuming the smallest payments, and amounts below the thresholds are reallocated pro rata to eligible Class Members. *Id.* § II.D. No claim form is required.

**Release.** In exchange, the Plan and the Settlement Class will release claims asserted in the action or arising out of the same factual predicate, namely the use of forfeitures, the Plan's expenses, and related fiduciary conduct. SA §§ 1.38, 7.1. The release is tailored to the conduct at issue.

**Independent Fiduciary.** Consistent with PTE 2003-39, Defendant has retained an Independent Fiduciary, Newport Trust Company, LLC, to evaluate the Settlement on behalf of the Plan and decide whether to authorize the release of the Plan's claims. SA §§ 1.27, 2.1. Its written determination is due no later than December 15, 2026, 30 days before the Fairness Hearing, and Plaintiff will file it with the Court in a supplemental submission on or before January 7, 2027. SA §§ 2.1.2, 2.1.5, 11.4. Its quoted fee of $12,500 is an Administrative Expense paid from the Gross Settlement Amount. SA §§ 1.3(f), 5.2.5.

**Attorneys' fees, costs, and Case Contribution Award.** The Settlement permits Class Counsel to seek fees of up to one-third of the Gross Settlement Amount ($250,000), reimbursement of litigation costs, and a Case Contribution Award of up to $5,000 for the Class Representative, all subject to Court approval and payable only after the Settlement Effective Date. SA §§ 1.5, 1.10, 5.2.1–5.2.2, 6.1. The Settlement is not conditioned on approval of any particular award. SA § 12.3.

## III. PRELIMINARY APPROVAL AND IMPLEMENTATION OF THE NOTICE PROGRAM

The Preliminary Approval Order directed Analytics to publish the Long Form Settlement Notice on the Settlement Website by October 16, 2026, and to deliver the Short Form Postcard

Settlement Notice by email (where available) or first-class mail by October 26, 2026. PAO ¶ 8. Analytics complied with these requirements by publishing the Long Form Settlement Notice on the Settlement Website by October 16, 2026; updating mailing addresses through the NCOA database; emailing or mailing the Short Form Postcard Settlement Notice to every identified Class Member beginning October 24, 2026; re-sending bounced and returned notices, including to new addresses located through skip-tracing; and maintaining a toll-free telephone line. Specifically:

- **Class data.** Between June 26 and September 30, 2026, Defendant provided Analytics with participant data compiled by the Plan's recordkeepers, which, after de-duplication, identified 113,156 unique Settlement Class Members, 87,502 of whom had email addresses. Analytics Decl. ¶ 5.
- **Address updating.** Before notice was delivered, Analytics updated mailing addresses using the NCOA database. *Id.* ¶ 6.
- **Settlement Website.** On or before October 16, 2026, Analytics posted the Long Form Settlement Notice, the Settlement Agreement and its exhibits, the Complaint, and the Preliminary Approval Order at www.Caliber401kSettlement.com. *Id.* ¶ 7. As of November 9, 2026, the website had received 10,098 unique visitors and 19,083 page views. *Id.* This motion and the fee motion will be posted upon filing. SA § 13.2.
- **Email and mail notice.** Analytics emailed the Short Form Postcard Settlement Notice to the 87,502 Class Members with email addresses between October 24 and October 26, 2026, and on October 26, 2026 mailed the postcard notice by first-class mail to the 25,651 Class Members without an email address. Analytics then mailed the postcard notice to the 1,820 Class Members whose emails bounced. *Id.* ¶¶ 9–10. Of the mailed notices, 51 were returned with a forwarding address and re-mailed to that address, and 1,056 were returned without one; through skip-tracing, Analytics located 841 new addresses and re-mailed the notice to each. *Id.* ¶ 11. In all, only 215 of the 113,156 identified Class Members (approximately 0.19%) remain undeliverable, so notice reached approximately 99.8% of the Settlement Class. *Id.* ¶ 12.
- **Toll-free line.** Analytics maintains a toll-free telephone line that had received 447 calls as of November 9, 2026. *Id.* ¶ 8.
- **CAFA notice.** On June 30, 2026, Analytics, on Defendant's behalf, served the CAFA Notice on the Attorney General of the United States and the Attorneys General of all 50 states, the District of Columbia, and Puerto Rico. SA § 2.5; Analytics Decl. ¶ 13. No government official has objected.

The Notices informed Class Members of the nature of the action, the Settlement terms, the Plan of Allocation, the release, Class Counsel's intent to seek fees of up to one-third of the Gross Settlement Amount plus costs and a Case Contribution Award of up to $5,000, the date and place of the Fairness Hearing, and how and when to object. SA Exs. A–B; PAO ¶ 7. The objection deadline is December 15, 2026. PAO ¶ 11.[3] As of the date of this motion, neither Analytics nor Class Counsel is aware of any objection. Analytics Decl. ¶ 15; Chirinos Decl. ¶ 14.

## **ARGUMENT**

Plaintiff addresses the issues in the order this Court has recently followed in resolving final approval motions: (1) Article III standing; (2) certification of the Settlement Class; (3) appointment of Class Counsel; (4) the adequacy of notice; and (5) whether the Settlement is fair, reasonable, and adequate under Rule 23(e)(2) as informed by the factors set out in *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). *See Corrente v. Charles Schwab Corp.*, No. 4:22-cv-470, 2025 WL 3270219, 2025 U.S. Dist. LEXIS 230708 (E.D. Tex. Nov. 24, 2025) (Mazzant, J.). Plaintiff then addresses the Plan of Allocation.

## **I. PLAINTIFF AND THE SETTLEMENT CLASS HAVE ARTICLE III STANDING**

The Court's obligation to assure itself of Article III standing "extends to court approval of proposed class action settlements." *Corrente*, 2025 U.S. Dist. LEXIS 230708, at *9 (quoting *Frank v. Gaos*, 586 U.S. 485, 492 (2019)). The Fifth Circuit "has not yet decided whether standing must

---

[3]The Preliminary Approval Order listed the Clerk's office at the United States Courthouse in Plano, 7940 Preston Road, Room 101, Plano, Texas 75024, as the address for filing objections. PAO ¶ 11. Because the Fairness Hearing will be held at the Paul Brown United States Courthouse in Sherman, the Notices as sent and posted directed objectors to the Clerk's office there, 101 East Pecan Street, Room 216, Sherman, Texas 75090. Analytics Decl. ¶ 14 & Exs. A, C. Both are offices of the Clerk of this Court, and this non-substantive change, which the Parties agreed to, *see* PAO ¶ 8, did not affect Class Members' ability to object. Plaintiff will confirm in the January 7, 2027 supplemental submission whether any objections were filed at either office.

be proven for unnamed class members, in addition to the class representative." *Id.* (quoting *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 768 (5th Cir. 2020)). Under the approach of *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672 (7th Cir. 2009), "courts look to whether the named plaintiffs or class representatives have standing." *Id.* at *9 (quoting *In re Deepwater Horizon*, 785 F.3d 1003, 1019 (5th Cir. 2015)). Under the approach of *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006), "the class must . . . be defined in such a way that anyone within it would have standing," without "scrutinizing or weighing any evidence of absent class members' standing." *Id.* at *10 (quoting *In re Deepwater Horizon*, 739 F.3d 790, 801 (5th Cir. 2014)). As in *Corrente*, standing exists here under either approach. *See id.* at *11–13.

*Kohen.* Plaintiff participated in the Plan, a defined contribution plan, throughout the Class Period, and administrative expenses were deducted from his individual account that, he alleges, should have been paid with forfeited employer contributions. Chirinos Decl. ¶ 20; ECF No. 12 ¶¶ 12–14. That alleged reduction in the value of his account is a concrete, particularized economic injury, traceable to the fiduciaries' challenged use of forfeitures, and redressable by the restorative payments the Settlement provides. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (elements of standing); *Corrente*, 2025 U.S. Dist. LEXIS 230708, at *12 ("[I]t is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered.") (quoting *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007)). ERISA § 502(a)(2) "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008). This case is therefore unlike *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020), where the Supreme Court emphasized that the plaintiffs participated in "a defined-benefit plan, not a defined-contribution plan," and so would receive the same fixed benefits regardless of the outcome.

*Denney*. The Settlement Class is limited to persons who participated in the Plan during the Class Period (and their Beneficiaries and Alternate Payees). SA § 1.46. Every such participant held an individual account that was subject to the Plan's administrative expenses during the Class Period and to the challenged forfeiture practices, and every member who receives a payment will receive it in proportion to the expenses actually deducted from his or her account. SA Ex. D § II.B–C. The class definition thus includes only persons who allege the same injury as Plaintiff, traceable to the same conduct and redressable by the Settlement. *See Corrente*, 2025 U.S. Dist. LEXIS 230708, at *12–13. Article III is satisfied.

## II. THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

Certification requires that the class satisfy "the requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation," and at least one subsection of Rule 23(b). *Corrente*, 2025 U.S. Dist. LEXIS 230708, at *14 (quoting *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 933 (5th Cir. 2023)). The Fifth Circuit also requires that the class be ascertainable. *Id.* (citing *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)). Because certification is for settlement only, the Court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court preliminarily found each requirement satisfied, PAO ¶ 2, and nothing has changed.

### A. The Settlement Class Is Ascertainable.

The "touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Corrente*, 2025 U.S. Dist. LEXIS 230708, at *15 (quoting *Earl v. Boeing Co.*, 339 F.R.D. 391, 422 (E.D. Tex. 2021), *rev'd on other grounds*, 53 F.4th 897 (5th Cir. 2022)). Membership here

turns on a single objective fact, participation in the Plan during the Class Period, which is recorded in the recordkeepers' data. Indeed, the recordkeepers have already identified every Class Member by name, and Analytics used that data to deliver individual notice. Analytics Decl. ¶¶ 5–12. The class is ascertainable.

**B. The Requirements of Rule 23(a) Are Satisfied.**

**Numerosity.** A plaintiff must provide "some evidence or reasonable estimate of the number of purported class members." *Corrente*, 2025 U.S. Dist. LEXIS 230708, at *18 (quoting *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016)). The recordkeepers identified 113,156 Class Members. Analytics Decl. ¶ 5. Joinder is plainly impracticable. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (100 to 150 members "within the range that generally satisfies the numerosity requirement").

**Commonality.** Commonality requires "a common legal contention capable of class-wide resolution." *Corrente*, 2025 U.S. Dist. LEXIS 230708, at *21 (quoting *Flecha*, 946 F.3d at 767). The central questions here, whether the Plan's fiduciaries breached their duties of loyalty and prudence, engaged in prohibited transactions, or violated the anti-inurement rule in their Plan-wide decisions about forfeitures, and the resulting loss to the Plan, are common to every participant and will "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis omitted).

**Typicality.** Typicality does not require "a complete identity of claims"; it asks whether the class representative's claims share the same essential characteristics as those of the class. *Corrente*, 2025 U.S. Dist. LEXIS 230708, at *24 (quoting *Ward v. Hellerstedt*, 753 F. App'x 236, 246–47 (5th Cir. 2018)). Plaintiff's claims arise from the same Plan-wide conduct, rest on the same legal

theories, and seek the same relief on behalf of the Plan under ERISA §§ 409 and 502(a)(2) as the claims of every other Class Member.

**Adequacy.** Adequacy considers "(1) the zeal and competence of the representatives' counsel; (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risks of conflicts of interests between the named plaintiffs and the class they seek to represent." *Corrente*, 2025 U.S. Dist. LEXIS 230708, at *26 (quoting *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 737 (5th Cir. 2023)). Plaintiff actively participated in the case, approved the mediator's proposal, and has no interest antagonistic to the class; he will be paid under the same formula as every other Class Member. Chirinos Decl. ¶ 20. Class Counsel are experienced ERISA and class action litigators who vigorously prosecuted the case. *Id.* ¶¶ 2–8, 22–27.

**C. The Requirements of Rule 23(b)(1) Are Satisfied.**

A class may be certified under Rule 23(b)(1) where separate actions would create a risk of "(A) inconsistent or varying adjudications . . . that would establish incompatible standards of conduct for the party opposing the class," or "(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications." Fed. R. Civ. P. 23(b)(1). Claims under ERISA § 502(a)(2) are brought in a representative capacity on behalf of the Plan, and any recovery runs to the Plan. Separate suits by individual participants would risk subjecting the Plan's fiduciaries to inconsistent standards for the same Plan-wide forfeiture decisions, and an adjudication in one participant's suit would, as a practical matter, determine the Plan's claims for everyone. For these reasons, courts routinely certify ERISA fiduciary-breach classes under Rule 23(b)(1). *See* ECF No. 36 at 19

(collecting cases). A Rule 23(b)(1) class is a mandatory, non-opt-out class, *Corrente*, 2025 U.S. Dist. LEXIS 230708, at *37 n.8, and Class Members retained the right to object. PAO ¶ 11.

## III. THE COURT SHOULD CONFIRM THE APPOINTMENT OF CLASS COUNSEL

"[A] court that certifies a class must appoint class counsel," considering the work counsel has done in identifying or investigating potential claims, counsel's experience in handling class actions and the types of claims asserted, counsel's knowledge of the applicable law, and the resources counsel will commit. Fed. R. Civ. P. 23(g)(1); *see Corrente*, 2025 U.S. Dist. LEXIS 230708, at *33. The Court preliminarily found these factors satisfied. PAO ¶ 2(f). Class Counsel investigated and developed the forfeiture claims from the Plan's public filings, drafted the detailed Amended Complaint, opposed the motion to dismiss, served discovery, worked with a consulting expert, and negotiated the Settlement; they have extensive ERISA and class action experience, including Mr. Chirinos's decade defending ERISA class actions at Proskauer Rose LLP, Mr. Rudenco's extensive experience litigating complex class actions, with a focus on representing plaintiffs in ERISA fiduciary-breach litigation, and Mr. Kendall's service as a United States District Judge. Chirinos Decl. ¶¶ 2–8, 22–27. The Court should confirm the appointment of Chirinos Law Firm PLLC, Milberg, PLLC, Bloom Legal LLC, and Kendall Law Group, PLLC as Class Counsel. PAO ¶ 3.

## IV. NOTICE SATISFIED RULE 23, DUE PROCESS, AND CAFA

Before approving a settlement, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For a Rule 23(b)(1) class, the Court "may direct appropriate notice." Fed. R. Civ. P. 23(c)(2)(A). A settlement notice "need only satisfy the broad reasonableness standards imposed by due process," which in a mandatory class action "requires that class members be given information reasonably necessary

for them to make a decision whether to object to the settlement." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (citation omitted); *see Corrente*, 2025 U.S. Dist. LEXIS 230708, at *37; *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313–14 (1950). Courts consider both the type of notice and its content. *Corrente*, 2025 U.S. Dist. LEXIS 230708, at *37.

**Type of notice.** The notice program met these standards and the Court's specific directives. PAO ¶¶ 7–8. Analytics delivered individual notice by email and first-class mail to every Class Member identified in the Plan's records, after NCOA updates; re-sent bounced emails by mail; re-mailed returned notices to forwarding addresses or to new addresses located through skip-tracing; and maintained the Settlement Website and a toll-free line.[4] Analytics Decl. ¶¶ 5–12. Notice was successfully delivered to approximately 99.8% of the Settlement Class; only 215 notices (approximately 0.19%) remain undeliverable. *Id.* ¶¶ 11–12. *See Corrente*, 2025 U.S. Dist. LEXIS 230708, at *42 (approving notice reaching 97% of class; collecting cases approving notice reaching 81.4% and 90%). The timing was reasonable as well: Class Members had approximately 50 days after final notice delivery to object, and approximately 80 days elapsed between notice and the Fairness Hearing. *See id.* at *41–42 (collecting cases finding gaps of 62 and 75 days adequate).

**Content.** The Court approved the content of the Notices, finding that they fairly and adequately describe the Settlement and Plan of Allocation, Class Counsel's intended fee, cost, and award requests, the time and place of the Fairness Hearing, and how to object. PAO ¶ 7. The Notices also explained, in plain language, the nature of the claims, the class definition, that

---

[4]The Settlement Website includes, among other things, a Frequently Asked Questions page summarizing essential case information; a page identifying the important dates and deadlines; downloadable copies of the Settlement Agreement and its exhibits, the Notices, the Amended Complaint, and the Preliminary Approval Order; and contact information for the Settlement Administrator and Class Counsel. Analytics Decl. ¶ 7.

payments are automatic and require no action, the release, and where to obtain more information. SA Exs. A–B. No Class Member has objected to the form or content of the Notices, and Class Counsel have answered inquiries from Class Members by phone and email, directing them to the Settlement Website and toll-free line as appropriate. Analytics Decl. ¶ 15; Chirinos Decl. ¶ 14.

**CAFA.** Analytics served the CAFA Notice on June 30, 2026, within ten days after the Settlement was filed. 28 U.S.C. § 1715(b); SA § 2.5. An order granting final approval may not issue "earlier than 90 days after" service of that notice. 28 U.S.C. § 1715(d). That period expired on September 28, 2026, well before the January 14, 2027 Fairness Hearing, and no government official has objected. The Court previously found that the form of CAFA Notice complies with CAFA. PAO ¶ 16.

## V. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

A class settlement may be approved only after a hearing and a finding that it is "fair, reasonable, and adequate," considering whether (A) the class representative and class counsel adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of the distribution method, the terms of any proposed fee award, and any side agreement; and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). The Fifth Circuit's *Reed* factors remain relevant: (1) the existence of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members. *Reed*, 703 F.2d at 172. Because "the Rule 23(e)(2) requirements overlap significantly with the

*Reed* factors," this Court "consider[s] the Rule 23(e)(2) requirements as informed by the *Reed* factors." *Corrente*, 2025 U.S. Dist. LEXIS 230708, at *44 (quotation omitted).

The Court "should keep in mind the strong presumption in favor of finding a settlement fair," *Purdie v. Ace Cash Express, Inc.*, No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547, at *16 (N.D. Tex. Dec. 11, 2003), and should not "decide the merits of the action or attempt to substitute its own judgment for that of the parties," *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983).

### A. Plaintiff and Class Counsel Adequately Represented the Settlement Class (Rule 23(e)(2)(A)).

The Court has already preliminarily found that Plaintiff's interests align with those of the Settlement Class and that Class Counsel have done the work, have the experience, and have committed the resources needed to represent the class. PAO ¶ 2(d), (f). Nothing has changed. Like every Class Member, Plaintiff was a Plan participant whose account bore the administrative expenses at issue, and he seeks the same Plan-wide relief under a uniform allocation formula. He reviewed the pleadings, communicated regularly with counsel, assisted with mediation preparation, and evaluated and approved the mediator's proposal. Chirinos Decl. ¶ 20. Class Counsel investigated and developed the forfeiture claims from the Plan's public filings, fully briefed the opposition to Defendant's motion to dismiss, retained and worked with a consulting expert, and negotiated the Settlement through a contested, Court-ordered mediation. *Id.* ¶¶ 2–8. *See Corrente*, 2025 U.S. Dist. LEXIS 230708, at *45–46 (finding adequacy where representatives were actively involved, had no conflicts, and counsel had extensive class action experience). This factor supports final approval.

### B. The Settlement Was Negotiated at Arm's Length and Is Free of Collusion (Rule 23(e)(2)(B); *Reed* Factor 1).

Rule 23(e)(2)(B) and the first *Reed* factor ask whether the settlement was the product of arm's-length bargaining rather than fraud or collusion. The Court "may presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Corrente*, 2025 U.S. Dist. LEXIS 230708, at *46–47 (citation omitted). There is no such evidence here, and the process affirmatively confirms fairness. The Settlement resulted from Court-ordered mediation before a sitting Magistrate Judge, after the Parties failed to reach agreement at the session itself, and only after both sides accepted Judge Hawthorn's mediator's proposal. Chirinos Decl. ¶¶ 7–8. The involvement of "an experienced and well-known" mediator "is also a strong indicator of procedural fairness." *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017) (quotation omitted); *see Corrente*, 2025 U.S. Dist. LEXIS 230708, at *47. The amount of attorneys' fees was not negotiated with Defendant; the Settlement Agreement merely caps any request, and the Court retains full authority over any award. SA §§ 6.1, 12.3. This factor strongly supports approval.

### C. The Relief Is Adequate (Rule 23(e)(2)(C)).

#### *1. The costs, risks, and delay of trial and appeal (Reed Factors 2–5).*

*Complexity, expense, and duration.* "[S]ettling avoids the risks and burdens of potentially protracted litigation." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004). ERISA fiduciary-breach class actions are "notoriously complex," *Blackmon v. Zachary Holdings, Inc.*, No. SA-20-CV-00988-JKP, 2022 U.S. Dist. LEXIS 139417, at *15 (W.D. Tex. Aug. 5, 2022), and this case would have required resolution of the pending motion to dismiss, fact and expert discovery on the Plan's forfeiture practices and expense structure, class certification, likely *Daubert* and summary judgment motions, a trial involving competing experts, and almost certainly an appeal. Chirinos

Decl. ¶ 19. ERISA fiduciary-breach cases that are not resolved early can take the better part of a decade. *See, e.g.*, *Tibble v. Edison Int'l*, 843 F.3d 1187, 1191–92 (9th Cir. 2016) (en banc) (describing decade-long appellate history); *Tussey v. ABB, Inc.*, 850 F.3d 951, 955–56, 962 (8th Cir. 2017) (vacating judgment for second time in eleventh year of case). The Settlement delivers relief roughly sixteen months after the case was filed. This factor favors approval.

*Stage of proceedings and information available.* The question is whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers*, 358 F.3d at 369. "[F]ormal discovery is not a prerequisite to approving a settlement as reasonable." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012). Here, the Parties fully briefed the motion to dismiss, supplemented that briefing as the law developed, Plaintiff served party and third-party discovery, the Parties exchanged six years of Form 5500 data, and Plaintiff's consulting expert prepared a damages analysis under multiple theories before mediation. Chirinos Decl. ¶¶ 5–6. Plaintiff and Class Counsel knew the strengths and weaknesses of the case when they accepted the mediator's proposal.

*Probability of success.* "[A]bsent a showing of fraud or collusion, the probability of success on the merits is the most important *Reed* factor." *Corrente*, 2025 U.S. Dist. LEXIS 230708, at *52 (quoting *Smith v. Crystian*, 91 F. App'x 952, 955 n.3 (5th Cir. 2004)). Plaintiff believes his claims are strong, but forfeiture claims sit in an unsettled area of ERISA law. Several courts have dismissed similar claims at the pleading stage on the ground that the plan document authorized using forfeitures to offset employer contributions, while others have allowed similar claims to proceed. *Compare Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 864, 869 (N.D. Cal. 2024) (dismissing forfeiture claims), *appeal argued*, No. 25-826 (9th Cir.), *and Dimou v. Thermo Fisher Sci. Inc.*, No. 23-cv-1732-BJC-JLB, 2025 U.S. Dist. LEXIS 178980, at *18–23 (S.D. Cal. Sept. 9,

2025) (dismissing forfeiture claims with prejudice), *with Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 943–46 (N.D. Cal. 2024) (denying motion to dismiss loyalty and prudence claims), *and Perez-Cruet v. Qualcomm Inc.*, No. 23-cv-1890-BEN (MMP), 2024 U.S. Dist. LEXIS 93522, at *6–8 (S.D. Cal. May 24, 2024) (denying motion to dismiss); *see also* Chirinos Decl. ¶ 19. There is no controlling Fifth Circuit authority, and the Fifth Circuit is now considering the theory in *Estay v. Ochsner Clinic Foundation*, 2026 WL 809570 (E.D. La. Mar. 24, 2026) (dismissing forfeiture claims with prejudice), *appeal docketed*, No. 26-30236 (5th Cir.). That appeal is fully briefed but has not been set for oral argument, and it is unlikely to be decided before the Fairness Hearing. The Ninth Circuit has heard argument in *Hutchins* but has not ruled. Had the Court granted Defendant's motion, the Settlement Class would have recovered nothing. And even on liability, Plaintiff would have had to prove a loss to the Plan on a full record, in the face of Defendant's argument that participants bore materially lower expenses than Plaintiff alleged. *See McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237–38 (5th Cir. 1995) (ERISA fiduciary-breach claim failed for lack of proof of a loss to the plan). Chirinos Decl. ¶¶ 16–19.

*Range of possible recovery.* The Court must "establish the range of possible damages that could be recovered at trial, and, then, by evaluating the likelihood of prevailing at trial and other relevant factors, determine whether the settlement is pegged at a point in the range that is fair to the plaintiff settlors." *Maher*, 714 F.2d at 460 (citation omitted); *Corrente*, 2025 U.S. Dist. LEXIS 230708, at *53–54. Under Plaintiff's most aggressive theory, his consultant estimated maximum Class Period losses of approximately $8.14 million, or $12.43 million with compounded earnings; Defendant contended participants suffered no harm because employer contributions were entirely discretionary under the terms of the Plan but, in any event, only about $6.7 million in forfeitures were available to offset administrative expenses if used for that purpose; and under the narrower

unallocated-forfeiture theory, Plaintiff's consultant estimated losses were approximately $608,000, or $907,000 with earnings. Chirinos Decl. ¶¶ 16–18. The $750,000 Settlement therefore recovers roughly 83% of the narrower theory (and more than 100% of it before earnings) and approximately 6% to 11% of the maximum models. *Id.* Class settlements can be fair and adequate even when they "amount to a fraction of the potential recovery." *Parker v. Anderson*, 667 F.2d 1204, 1210 n.6 (5th Cir. 1982) (quotation omitted); *see Celeste v. Intrusion Inc.*, No. 4:21-CV-307-SDJ, 2022 U.S. Dist. LEXIS 226841, at *14 (E.D. Tex. Dec. 16, 2022) (noting that class plaintiffs typically recover "three-to-six cents on the dollar"). The recovery here compares favorably to other forfeiture settlements. *See Rodriguez v. Intuit Inc.*, No. 5:23-cv-05053-PCP, ECF No. 76-1 at 17 (N.D. Cal. May 16, 2025) (approximately 13% of plaintiff's full damages theory); *Buescher v. N. Am. Lighting, Inc.*, No. 2:24-cv-02076-CSB-EIL, ECF No. 38 at 11 (C.D. Ill. Mar. 13, 2026) (approximately 10.2% of estimated losses), *final approval granted*, ECF No. 55 (C.D. Ill. July 28, 2026).[5] These factors favor approval.

**2. *The method of distributing relief is effective.***

The distribution method could hardly be more effective. Class Members need not do anything to be paid. Amounts will be calculated from the Plan's own recordkeeping data, deposited directly into the accounts of current participants, and mailed by check to former participants at

---

[5]The recovery is likewise in line with ERISA fiduciary-breach settlements approved nationwide. *See, e.g.*, *Sims v. BB&T Corp.*, No. 1:15-CV-732, 2019 U.S. Dist. LEXIS 75837, at *19 (M.D.N.C. May 6, 2019) (19% of total damages sought); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-cv-03698-NC, 2018 U.S. Dist. LEXIS 80219, at *15–16 (N.D. Cal. May 11, 2018) (approximately 10% of losses under plaintiffs' highest model); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (securities class action settlements since 1995 "have recovered between 5.5% and 6.2% of the class members' estimated losses") (citation omitted); *see also Brooks v. CenterPoint Energy, Inc.*, No. 4:24-cv-2940, ECF No. 60 at 11 (S.D. Tex. Apr. 14, 2026) ($800,000 ERISA settlement against estimated maximum damages of $3.5 million to $4.0 million), *approved*, ECF No. 69 ¶ 7(d) (S.D. Tex. June 16, 2026).

NCOA-updated addresses. SA Ex. D § II. *Cf. Celeste*, 2022 U.S. Dist. LEXIS 226841, at *15 (approving pro rata distribution through third-party administrator). Residual amounts, including uncashed checks, will be used to defray Plan expenses rather than revert to Defendant. SA § 1.29.

#### *3. The terms of the proposed attorneys' fee award are reasonable.*

Class Counsel seek one-third of the Gross Settlement Amount, the maximum disclosed in the Notices, plus reimbursement of litigation costs. The request is explained in the concurrently filed fee motion and is consistent with common-fund awards in this District and in ERISA settlements in this Circuit. Fees are payable only after the Settlement Effective Date, SA § 5.2.1, and the Settlement does not depend on the Court's award, SA § 12.3, so any reduction would inure to the benefit of the Settlement Class. This consideration favors approval. *See Corrente*, 2025 U.S. Dist. LEXIS 230708, at *55–58 & n.10 (evaluating fee terms under Rule 23(e)(2)(C)(iii) separately from the merits of the fee motion).

#### *4. There are no side agreements (Rule 23(e)(3)).*

The Parties have no agreement in connection with the Settlement other than the Settlement Agreement itself. Chirinos Decl. ¶ 9; PAO ¶ 4(d). This consideration is satisfied. *Corrente*, 2025 U.S. Dist. LEXIS 230708, at *58–59.

### D. The Settlement Treats Class Members Equitably (Rule 23(e)(2)(D)).

Every Class Member's recovery is determined by the same objective formula: a pro rata share based on the administrative expenses actually deducted from his or her account during the Class Period, which is the measure of harm alleged. SA Ex. D § II.C. Uniform de minimis thresholds keep distribution costs from consuming tiny payments, and the amounts below those thresholds are reallocated to eligible members rather than diverted elsewhere. *Id.* § II.D. Beneficiaries and Alternate Payees are paid according to their entitlements. *Id.* § II.E. The only

differential is the requested $5,000 Case Contribution Award, which this Court has recognized "is consistent with what other courts in the Fifth Circuit have awarded to class representatives." *Corrente*, 2025 U.S. Dist. LEXIS 230708, at *60. This factor supports approval.

### E. Class Counsel, the Class Representative, and Absent Class Members Support the Settlement (*Reed* Factor 6).

The Court "is entitled to rely upon the judgment of experienced counsel for the parties," and "absent fraud, collusion, or the like," should be hesitant to substitute its own judgment for that of counsel. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see Corrente*, 2025 U.S. Dist. LEXIS 230708, at *61. Class Counsel, who have extensive ERISA and class action experience, and the Class Representative believe the Settlement is fair, reasonable, and adequate. Chirinos Decl. ¶¶ 15, 20. Although the objection deadline has not yet passed, neither Analytics nor Class Counsel is aware of any objection. Analytics Decl. ¶ 15. Class Counsel have also corresponded with numerous current and former participants about the Settlement by phone and email, and, with one exception, none has expressed opposition.[6] Chirinos Decl. ¶ 14. Plaintiff will report the final tally by January 7, 2027. This factor supports approval.

### F. The Independent Fiduciary's Review Provides an Additional Safeguard.

Under PTE 2003-39, an independent fiduciary with no relationship to the Parties must evaluate and authorize the Plan's release of its claims. SA §§ 2.1–2.1.5, 11.4. After reviewing the case file and interviewing counsel for each side, the Independent Fiduciary must determine, among other things, whether (1) the Settlement terms, including the scope of the release, the amount of cash received by the Plan, and the amount of any attorneys' fee award or other sums paid from the

[6] On November 10, 2026, a Settlement Class Member stated in an email to Class Counsel that they "do not support a partial settlement." Class Counsel provided that individual with the instructions for objecting. As of the date of this filing, the individual has not responded or indicated an intent to object. Chirinos Decl. ¶ 14.

recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone; (2) the terms are no less favorable to the Plan than comparable arm's-length terms that unrelated parties would have agreed to; and (3) the transaction is not part of an agreement, arrangement, or understanding designed to benefit a party in interest. *See* PTE 2003-39, 68 Fed. Reg. 75,632 (Dec. 31, 2003), *as amended*, 75 Fed. Reg. 33,830 (2010). This additional, independent review, which is underway, protects the Plan and its participants and further supports the fairness of the Settlement. *See Buescher*, ECF No. 50-2 at 3, 8 (independent fiduciary report in forfeiture settlement making these determinations). Plaintiff will file the Independent Fiduciary's determination with the Court in a supplemental submission on or before January 7, 2027. *See* PAO ¶ 12; *see also Blackmon*, 2022 U.S. Dist. LEXIS 139417, at *15 (approving ERISA settlement and noting that "the independent fiduciary has fully endorsed the proposed settlement").

## VI. THE PLAN OF ALLOCATION SHOULD BE FINALLY APPROVED

A plan of allocation "formulated by competent and experienced counsel" will generally be upheld if it has a "reasonable, rational basis." *Celeste*, 2022 U.S. Dist. LEXIS 226841, at *15–16 (quoting *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012)). The Court has already preliminarily found the Plan of Allocation fair, reasonable, and adequate. PAO ¶ 4(f). It distributes the Net Settlement Amount in proportion to each Class Member's Expense Balance, the same measure of harm that underlies the claims, using objective recordkeeper data and without any claims process. SA Ex. D § II. *See Celeste*, 2022 U.S. Dist. LEXIS 226841, at *16 (approving pro rata allocation tied to measure of loss). The Court should grant final approval.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court (1) find that Plaintiff and the Settlement Class have Article III standing; (2) finally certify the Settlement Class under Rules 23(a) and 23(b)(1) and confirm the appointment of Class Counsel; (3) find that the notice program satisfied Rule 23, due process, and CAFA; (4) grant final approval of the Settlement; (5) finally approve the Plan of Allocation; and (6) enter the proposed Final Approval Order and Judgment submitted herewith, dismissing the action with prejudice.

Dated: November 13, 2026

Respectfully submitted,

*/s/ Tulio D. Chirinos*
**CHIRINOS LAW FIRM PLLC**
Tulio D. Chirinos (*pro hac vice*)
20283 State Road 7, Suite 592
Boca Raton, FL 33498
Telephone: (561) 299-6334
tchirinos@chirinoslawfirm.com

**KENDALL LAW GROUP, PLLC**
*/s/Joe Kendall*
Joe Kendall
Texas Bar No. 11260700
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
Telephone: 214-744-3000
jkendall@kendalllawgroup.com

**BLOOM LEGAL LLC**
Seth J. Bloom
Texas Bar No. 24094426
825 Girod Street, Suite A
New Orleans, Louisiana 70113
Telephone: (504) 599-9997
sjb@bloomlegal.com

**MILBERG, PLLC**
Alexandr Rudenco (*pro hac vice*)
800 S. Gay St., Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
arudenco@milberg.com

*Counsel for Plaintiff and the Settlement Class*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h) and (i), counsel for Plaintiff conferred with counsel for Defendant, Morgan, Lewis & Bockius LLP, regarding the relief requested in this motion on November 12, 2026. Defendant does not oppose the relief requested.

*/s/ Tulio D. Chirinos*
Tulio D. Chirinos

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2026, a true and correct copy of the foregoing document was filed via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

*/s/ Tulio D. Chirinos*
Tulio D. Chirinos